## S. BURSON v. FIRE ASS'N OF PHILADELPHIA.

136    267
151    617
136    267
183    385
136        267
f  33 SC  1264

APPEAL BY DEFENDANT FROM THE COURT OF COMMON PLEAS OF MONROE COUNTY.

Argued March 10, 1890—Decided October 6, 1890.
[To be reported.]

1. When, after a candid explanation of his title, a person is advised by a representative of an insurance company to insure certain goods, in which he has an interest, in his own name as owner, and acts upon this advice, the company will be estopped from defending on the ground that his interest in the property does not amount to ownership.

(*a*) In arranging with the holder of a fire insurance policy for its renewal, the agent of the insurance company said, ''I will make you another policy like the first one, only I will make it so that hereafter, if you wish to continue, we will only give you a receipt, do not have to make a new policy for you : "

2. The assured had a right to suppose that a policy, afterwards delivered to him under this arrangement, was essentially similar to the original policy ; and he was not bound by a warranty clause in it, which he did not know of and which had not been in the first policy : Susq. Ins. Co. v. Swank, 102 Pa. 17, distinguished.

3. But a warranty of sole and unconditional ownership is not broken, as to the insurer, by reason of the fact that the assured had made a ''lease"

of the goods insured, which amounted in law to a conditional sale, reserving title until full payment of the consideration; the insurer has no standing to assert that such transaction is a legal fraud.

4. A recovery to the full extent of the policy may be had, in such a case, when the goods insured have been destroyed by fire, although more than half the price to be paid for them under the lease has been received by the assured, as payments to him on account do not transfer the title pro tanto, and he must account for the goods to the conditional vendee.

5. An assignment of error to the admission of testimony, which does not give the offer made, nor the substance of the testimony admitted under it, and does not show any exception sealed, although it quotes the objections made to the admission of the testimony, is not according to the Rule of the Supreme Court, and will not be considered.

Before PAXSON, C. J., STERRETT, GREEN, CLARK and WILLIAMS, JJ.

No. 183 July Term 1889, Sup. Ct.; court below, No. 7 February Term 1886, C. P.

On January 4, 1886, Stroud Burson brought debt against the Fire Association of Philadelphia upon a policy of insurance against fire, issued by the defendant company to the plaintiff. Issue.

At the trial on December 17, 1887, the following facts were shown:

Early in 1881, Simeon Flory, who was the proprietor of a store in Stroudsburg and owned a stock of hardware, tinware and tools therein contained, desired to sell out his stock and business for ready money, and proposed to his brother William S. Flory, who was then in his employ as a clerk or salesman, that the latter should buy him out. William went to Burson, the plaintiff, explained the situation to him, and asked him to advance the money required to make such a purchase. After some consultation, an arrangement was effected and carried out, under which Simeon Flory made a bill of sale to Burson of all the stock of goods, etc., and assigned to him all outstanding book accounts, etc., Burson paying and securing to Simeon the price agreed upon therefor, viz., $3,320. Burson then made a verbal lease of the goods to William, the terms of which were that William should pay to Burson annually, as a rent upon the goods, a sum equal to the interest upon the purchase money paid by Burson to Simeon, and as much every year on account

### Statement of Facts.

of the principal as he could; should keep up the stock to its then value, and keep the property insured, and, upon payment of the entire principal, he should receive a bill of sale from Burson, the goods to remain the property of Burson and under his control " until the last dollar was paid." The book accounts were turned over by Burson to W. S. Flory, along with the goods, and were afterwards collected by the latter, who used the moneys collected in carrying on the business under the lease and in making payments to Burson.

Immediately after the execution and delivery of the bill of sale from Simeon Flory to Burson, the plaintiff's brother, Lewis M. Burson, accompanied by W. S. Flory, went to the office of T. M. McIlhaney, an agent of the defendant company. It was admitted by the defendant that McIlhaney, as its agent, had full power to receive proposals for insurance against loss or damage by fire on property located in Stroudsburg and vicinity, to issue and countersign policies and renewal receipts furnished by the defendant, to collect premiums and pay the same to the defendant, and to transact such other business as might be entrusted to his care. McIlhaney was dead when this suit was brought.

W. S. Flory testified for the plaintiff, under objection and exception to his competency as a witness, and to the admissibility of the testimony, that McIlhaney was fully informed by Lewis M. Burson and the witness, respecting the transaction between the witness and the plaintiff and the terms of the arrangement made by them, and was then asked what was the proper way of insuring the goods, to which he replied: " In the name of Stroud Burson;" and that in accordance with his suggestion a policy in the sum of $3,000, for one year, was thereupon taken out in the plaintiff's name. Lewis M. Burson testified, under objection and exception, substantially to the same effect, stating, in addition, that he informed McIlhaney that W. S. Flory, having rented the goods with the privilege of purchasing, would stay in the store as he was there before for Simeon Flory. The policy referred to, which was not the one in suit, was dated February 2, 1881, numbered 82,245, and was countersigned for the defendant company by McIlhaney. It did not contain any warranty as to ownership on the part of the insured. This policy was received in evidence for the plaintiff under objection and exception.

### Statement of Facts.

W. S. Flory testified, also, that a few days before policy 82,245 expired, McIlhaney came to the store, saw the witness, inquired whether it was desired to continue the insurance, and, upon receiving an affirmative reply, said : "I will make you another policy like the first one, only I will make it so that hereafter if you continue, we will only give you a receipt, do not have to make a new policy for you ; " that the witness replied : " Anything, so as it is all right ; " that McIlhaney then inquired whether the situation between the witness and the plaintiff was the same as when the first policy was made out, and on being informed by the witness that it was, except that a payment had been made to the plaintiff, he said that did not matter ; that McIlhaney then made out and handed to the witness a new policy and the witness paid him the premium thereon.

This second policy, which was the one in suit, bore date February 2, 1882, was in the sum of $3,000, and was in the name of Stroud Burson as the party insured. It contained the following provision.:

" This policy shall become void, unless consent in writing is indorsed by the association hereon, in each of the following instances, viz. : If the assured is not the sole and unconditional owner of the property ; or, if the interest of the assured in the property, whether as owner, trustee, consignee, factor, agent, mortgagee, lessee, or otherwise, is not truly stated in this policy ; or, if any change take place in the title, interest or possession of the property, (except in case of succession by reason of the death of the assured), whether by sale, transfer or conveyance, in whole or in part, or by legal process or judicial decree. . . . . "

At the expiration of one year, and for several years thereafter, the policy was renewed by written agreements, all in the same form, the last of which was as follows :

" No. 31,342.          Stroudsburg Agency, Feb'y 10, 1885.
" FIRE ASSOCIATION OF PHILADELPHIA.

" RECEIVED from Stroud Burson fifteen dollars, being the premium on three thousand dollars, insured under policy No. 438,809, which is hereby continued in force for one year, to wit : from the 10th day of Feb'y 1885, until the 10th day of Feb'y, 1886, at noon. But this renewal shall not be valid

until countersigned by Tho. M. McIlhaney, agent of said Fire Association of Philadelphia, at Stroudsburg.

"Tho. M. McIlhaney, Agent.

"It being understood and agreed that the terms and conditions upon which said policy was originally predicated shall continue valid and in force, and that there has been no change in the risk since first insured not indorsed on said policy, or otherwise acknowledged by said company in writing."

For some time after the issuing of this second policy W. S. Flory continued to carry on business at the store in his own name. He then took in a partner and thereafter conducted the business under the name of W. S. Flory & Co. That name was on the sign over the store door, and the purchase of goods for stock, as well as the other transactions connected with the business, were done under it. The plaintiff exercised no control over the business. Payments were made from time to time by Flory to the plaintiff, and on February 8, 1885, when the last settlement was made between them, the balance owing to the plaintiff was $1,200. On July 19, 1885, a fire destroyed most of the goods insured under the policy.

At the close of the testimony, the court, DREHER, P. J., charged the jury in part as follows :

This contract between plaintiff and defendant was entered into by the plaintiff with the defendant's agent Tho. M. McIlhaney, and it is one of the admissions in this case, that Thomas M. McIlhaney, who countersigned said policy, was at the time the agent of the company, and continued to act as such till the time of his death in December, 1885, with full power to receive proposals for insurance against loss or damage by fire, on property located in Stroudsburg and vicinity, with authority to issue and countersign policies and renewal receipts furnished by said defendant, to assent to assignments and transfer of insurance policies, to collect premiums and pay to the defendant, and to transact such other business as may be intrusted to his care. By that admission, you will notice that Squire McIlhaney was an agent for this defendant company [clothed with more than the usual powers given by insurance companies to what are called local agents.] [18] . . . . .

The relation between this plaintiff and this association, as in-

Charge of Court below.

sured and insurer, commenced on the second day of February, 1881. A policy was then issued by the defendant to the plaintiff upon this stock of goods, for one year, and at the expiration of that year, or a few days afterwards, there was executed this policy, which the plaintiff has declared upon in his narr. After that, there was no new policy issued, but simply renewal receipts.

The property covered by this policy of insurance was destroyed by fire, as I recollect the evidence, some time in the month of July, 1885. The plaintiff brings his suit now upon this policy, claiming to recover the value of the goods destroyed not exceeding in amount the sum of $3,000, less the tools and about $100, part of the tools and the stoves sold for old iron. The defendant resists payment for this property, and has filed a number of pleas, which are simply statements or allegations made by the company in excuse of payment. And the first plea is, that the plaintiff at the time of the fire was not the sole and unconditional owner of the goods burnt, but that the whole or a part of said goods belonged to another party or parties in no way a party to the contract of insurance; and that the interest of the plaintiff in the goods mentioned in the policy, if he had any interest, was not correctly stated to the defendant at the time of the original contract of insurance, nor correctly set forth in the policy; nor was the defendant notified of, and his consent in writing procured to any subsequent change in the title, interest or possession of the goods, as required by the terms of the policy and the renewals thereof; and that, therefore, by the express terms and conditions of the contract, the contract has become and is totally null and void.

If there was nothing else in this case, except as we have it upon the face of this policy, in writing and printing, we would say to you that any change that was made,—if the interest of Stroud Burson was not just what it is represented to be in this policy of insurance, that is, that he was the sole and unconditional owner of it,—if there was nothing else but this written paper, we would say to you that this plaintiff cannot recover. . . . . Stroud Burson, we must say to you, was not, when this first insurance was obtained, the sole and unconditional owner of that property; because, the undisputed evidence in the case is, that he had entered into an arrangement or agreement with W. S. Flory, by which he was to allow Flory to have the

possession of the goods, to use them in his business, with a contract to sell them to him at the price which he, Burson, paid to Simeon Flory for them. . . . .

Now you have here the evidence of W. S. Flory and Lewis M. Burson as to what was said to Squire McIlhaney when they went there to get this policy of insurance. And Flory swears that, after they stated what the interest of Stroud Burson was, that McIlhaney said the proper way to insure this property was in the name of Stroud Burson. [Now, we say to you that if Flory and Lewis M. Burson truly represented to Squire McIlhaney the relation that Stroud Burson sustained towards this property, or his interest in it—that is to say, that he had purchased it of Simeon Flory and had agreed to sell it to W. S. Flory for the same amount of money he had paid to Simeon, and that W. S. Flory was to pay him the yearly interest on that sum, and was to pay as he could on account of the principal, and that until he had paid the whole amount of money the property should remain, the title should be in Stroud Burson, and under his control, and that Flory was to keep up the stock to what it was when Stroud Burson purchased it, and to keep it insured,—then we say to you, that you should find a verdict in favor of the plaintiff on this first issue raised between the parties.] [19] If the evidence fails to satisfy you that such statement was made truly as to the title of Stroud Burson, and what they did say was the truth, then we say, you ought to find for the defendant on this first issue.

The second plea of the defendant is, that the policy of insurance was made, and renewed from time to time, upon condition and warranty of plaintiff, that he was the sole and unconditional owner of the property; whereas, he was not the sole and unconditional owner, but the plaintiff had at some time, to the defendant unknown, prior to the fire, to wit, the first of February, 1882, sold the property and transferred the possession to W. S. Flory, or W. S. Flory & Co., without the knowledge and consent of defendant as provided by the terms of the policy, by means whereof the said warranty and condition were broken and the policy became and was null and void. . . . . I say here, as I did in relation to the first issue joined between the parties, that there was a warranty by the written stipulations of this policy, and if there was nothing else in the case we would say

Charge of Court below.

to you, that if there had been any transfer or change in the title, interest or possession of this property, the plaintiff could not recover. But we have permitted the plaintiff to prove what occurred, as we have already stated to you.

Now, you will bear in mind that this allegation made by the plaintiff, that a true statement was made to the agent of the insurance company of his interest in this property and his relation with Flory, was made when the first policy was taken out in 1881. The suit is not on that policy, but it is on one issued in 1882. The first policy provided for an insurance for the term of one year, and also for the full end and term of any future time and times for which a premium of insurance shall be paid and indorsed on this policy or otherwise acknowledged in handwriting by the secretary or other authorized officer. That policy was not renewed by an indorsement on the back of it, but a new policy was issued; and [the question for you to pass upon is, was this policy issued upon the same terms and conditions as the old policy was, and did the agent of the company, Squire McIlhaney, when this new policy was written by him, understand,—was he informed by the plaintiff or Flory as to their then relations with each other and the ownership of this property? because I take it, it is necessary for the plaintiff to show that this new policy was issued upon the statements and representations made by the plaintiff's agent and Mr. Flory at the time the original policy was taken out. The only evidence we have upon this point, that I recollect of, is found in the testimony of Mr. Flory, who says, that at the end of the year Squire McIlhaney came to him in relation to this insurance, whether it was to be renewed, and asked Flory whether there was any change in the relation that he sustained to this property, and Flory told him no, the matter remained as before only that he had made a payment to Burson on account. Now, if that be true, and Squire McIlhaney then, as the agent of this company, filled up this new policy, then we have to say to you, that this new policy is to be considered, as respects the rights of these parties, just as the first policy would have been considered, if a fire had occurred within the year. Now then, if you find that this policy of February 2, 1882, was issued upon the representations, upon the strength of the statements and representations made when the first policy was taken out, and

Charge of Court below.

you find those statements to be a true statement of what Stroud Burson's interest was, then we say to you, you should find in favor of the plaintiff on this second issue.] [20] . . . . .

The parties have requested us to charge you upon certain points which they have presented to us.  The plaintiff asks us to charge:

1. That if Stroud Burson, the plaintiff, held the legal title to the property insured and had an interest in the same, he had an insurable interest and was the owner of the said property.

Answer: That proposition I affirm.

3. If the jury believe that at the time the policy of insurance was made, on which the suit was brought, Tho. M. McIlhaney, the agent of the defendant, was informed by the plaintiff that he had purchased the goods insured in said policy of Simeon Flory, and that he had entered into a verbal agreement with W. S. Flory for the sale to him of said property, and that by said agreement the goods were to remain in the possession of said W. S. Flory, and that he was to have the use of said goods in his business and to pay for such use an annual rent equal to the interest on the amount paid by plaintiff when he purchased of Simeon Flory, and also to keep the same insured, and to keep the amount of said stock of goods up to what it was when the said plaintiff bought the same, and that when the last dollar of the purchase money was paid to the said plaintiff he was to make out and deliver to the said W. S. Flory a bill of sale for the same, but that until the whole sum aforesaid was paid the said personal property was to remain the property of said plaintiff, and that said plaintiff further informed the said Tho. M. McIlhaney, agent of said defendant, that W. S. Flory had made a payment to the plaintiff on account of the purchase money aforesaid, then the said defendant is estopped from asserting that the plaintiff was not the sole and unconditional owner of the property insured.

Answer: I have here on my memorandum an affirmance of that point, but I see you refer in the commencement of the point to the policy on which suit is brought.  There is no evidence that that was said when this policy was issued.  Upon reflection, I shall affirm that point as it stands.[4]

4. That, if at the time the policy in suit was made the defendant's agent knew of his own knowledge or was credibly in-

formed by the plaintiff of his title or interest in the property insured, and then made out and delivered the policy, omitting therefrom such knowledge or information, then any mistakes therein were the mistakes of the defendant and do not avoid the policy.

Answer: This proposition is affirmed, so far as such knowledge on the part of the agent was gained from information or statements communicated to him by the plaintiff's agent, Lewis M. Burson, or W. S. Flory.[5]

5. That if at the time of the several renewals of the policy the agent knew or was informed of any change which had taken place in regard to the title or interest in the property insured, such renewals were a waiver of the conditions of the policy relative to such changes in title or interest.

Answer: To this proposition I make the same answer as to the one immediately preceding.[6]

6. That if Tho. M. McIlhaney, the agent of the defendant, had full power to receive proposals for insurance against loss by fire, and to issue and countersign policies and renewal receipts furnished him by the said defendant, and to collect and pay the premiums to the defendant, then he was the general agent of the defendant for the purposes aforesaid; and any knowledge or information possessed by him relative to the title or interest of the plaintiff in the property insured, or any act done by him within the scope of his said general agency, such knowledge, information or act was the knowledge, information and act of the defendant.

Answer: This is affirmed only to the extent that such knowledge or information was communicated to the defendant by plaintiff's agent or W. S. Flory.[7]

The defendant has also presented a number of points:

3. Under the contract between Stroud Burson and W. S. Flory, as proved by the undisputed evidence in the case, the said Flory became the owner of the goods in question with respect to the defendant company, and the said plaintiff was not the owner of said goods, and at the time of the fire he had no interest in the same except as between himself and said Flory to the extent of $1,200, the unpaid purchase money, and the unpaid interest on the same.

Answer: That I cannot affirm.[12]

4. While such interest to the extent of the unpaid purchase money is an interest which might be insured in a policy properly drawn for that purpose, the terms of the present policy are such that this interest is not thereby insured.

Answer: That I cannot affirm.[13]

6. By the terms of said policy said plaintiff warranted that said policy should become void unless consent in writing should be indorsed by the defendant association upon said policy, if the assured, that is to say, the plaintiff, was not the sole and unconditional owner of the said goods.

Answer: That is correct as the policy reads on its face.[14]

7. By the terms of said policy said plaintiff warranted that said policy should become void unless consent in writing should be indorsed by the defendant association upon said policy, if the interest of the assured in the property was not truly stated in said policy.

Answer: I answer this in the same manner as the sixth point.[15]

8. By the terms of said policy as continued in force by the several renewal receipts, the said plaintiff was not insured for any greater amount than to the extent of his interest in the property mentioned in the said policy, on February 10, 1885, the date of the last renewal, and if the plaintiff were otherwise entitled to recover at all, he could only recover for the amount of unpaid purchase money and accrued interest as of February 10, 1885, less the value of tools saved from the fire and the amount realized by said Flory from the sale of damaged goods after the fire.

Answer: I answer that in the same manner as I answered the sixth and seventh, that it is correct as the policy reads on its face.[16]

9. Under all the pleadings and the evidence in this case the plaintiff cannot recover, and your verdict must be for the defendant.

Answer: That I decline to affirm.[17]

I do not think it necessary to say anything further. You will take this case and apply the rules of law as I have stated them, to the evidence or the facts as you find them, and render a verdict accordingly. If you render a verdict for the plaintiff, it will be for an amount of loss [not exceeding $3,000, with interest], [21] allowing the defendant credit for the tools that

Arguments.

were saved and the damaged goods that were sold and something realized for.

The verdict of the jury was in favor of the plaintiff for $3,028.34. Rules for a new trial and in arrest of judgment having been discharged, judgment was entered on the verdict; whereupon the defendant took this appeal, assigning for error:

1. The admission of the "alleged statements or declarations of Lewis M. Burson and Wm. S. Flory to Tho. M. McIlhaney, the defendant's agent, and the replies of the latter thereto, at the time the first policy of insurance was issued, as set forth in bills of exception on pages 6, 10 and 29 of appendix. The objections to the admission of this evidence were : " (quoting the objections made when the testimony was admitted, but not quoting the offers, the substance of the testimony admitted thereunder, or the bills of exception.)

4–7. The answers to plaintiff's points.[4 to 7]

12–17. The answers to defendant's points.[12 to 17]

18–21. The portions of the charge embraced in [ ] [18 to 21]

*Mr. S. Holmes* and *Mr. Furman Sheppard*, for the appellant.

1. Compliance with the warranty that the insured was the sole and unconditional owner of the property, was a condition precedent to any recovery ; and testimony was inadmissible to contradict or control it, by showing that the agent of the insurer was informed of the facts which constituted its breach: State Ins. Co. v. Arthur, 30 Pa. 331 ; Jennings v. Insurance Co., 2 Denio 79 ; Kennedy v. Insurance Co., 10 Barb. 289 ; Atherton v. Brown, 14 Mass. 152 ; Wiggin v. Boardman, 14 Mass. 12 ; Flinn v. Tobin, 1 Mood. & Malk. 367 ; DeHahn v. Hartly, 1 T. R. 343 ; Farmers' Ins. & L. Co. v. Snyder, 16 Wend. 481 (30 Am. Dec. 118) ; Jefferson Ins. Co. v. Cotheal, 7 Wend. 72 (22 Am. Dec. 567) ; Woolmer v. Muilman, 1 W. Bl. 427 (3 Burr. 1419) ; N. Y. Gas L. Co. v. Insurance Co., 2 Hall 108 ; 1 Phillips on Ins., 284 ; Glendale Woolen Co. v. Insurance Co., 21 Conn. 19 (54 Am. Dec. 309) ; Holmes v. Insurance Co., 10 Metc. 211 ; Birmingham v. Insurance Co., 42 Barb. 457 ; Columbia Ins. Co. v. Cooper, 50 Pa. 331 ; Cooper v. Insurance Co., 50 Pa. 299. See also Martin v. Berens, 67 Pa. 462.

Arguments.

2. The disclosures alleged to have been made to the agent, respecting Burson's ownership, were misleading. He was deceived by the use of false terms. He was informed that the transaction between Burson and Flory was a lease of the goods, although the law calls it a sale. As respects creditors, and all other third parties dealing with Flory, he was the owner. The goods were undoubtedly liable for his debts, and Burson's ownership was not worth a straw. Nor were all the facts communicated to the agent. He was not told that the arrangement was intended simply to secure a loan to Flory, nor that Flory was going to carry on business in his own name and deal with the goods as his own. On the contrary, the representation was that Flory was to stay in the store in the same way that he had done before, when he was the clerk of his brother. Again; these statements were made in connection with a different policy from the one in suit: there was no evidence that the relations of the parties were explained when this policy was issued, and therefore the court should not have affirmed the plaintiff's third point: Sartwell v. Wilcox, 20 Pa. 117; Evans v. Mengel, 1 Pa. 68.

3. The alleged understanding that the new policy should be like the old one, will not bear the rigid interpretation given to it by the court. It meant simply that the new policy should be in the same amount, upon the same property, in the same name, for the same premium, for the same term, and issued by the same company. But, at all events, a different form of contract, with a warranty, was made by the acceptance and retention of the policy and the acceptance of the renewals thereof: Susq. Ins. Co. v. Swank, 102 Pa. 17; Parks v. Insurance Co., 5 Pick. 36. The answer to the plaintiff's sixth point was in conflict with the express limitations upon the power of the agent, contained in the policy; and in telling the jury, in the general charge, that McIlhaney was clothed with more than the usual powers given to local agents, the court was not sustained by any evidence as to what the usual powers of agents are, disregarded the universal practice of insurance companies, and misled the jury as to the importance to be given to McIlhaney's words and acts. We were entitled to explicit answers to our sixth, seventh and eighth points: Powers v. McFerran, 2 S. & R. 44; Smith v. Thompson, 2 S. & R. 49; Geiger v.

Welsh, 1 R. 348; Slaymaker v. St. John, 5 W. 27; Carpenter
v. Mayer, 5 W. 483; Hood v. Hood, 2 Gr. 229; Penna. R. Co.
v. Zebe, 33 Pa. 324.   The instructions as to the measure of
damages were contradictory, and therefore erroneous: Selin v.
Snyder, 11 S. & R. 319.

*Mr. J. B. Storm*, for the appellee:

Counsel cited: (1) On the subject of warranty, and as to
the admission of evidence to establish fraud, mistake of the in-
surer's agent, or mutual mistake of the parties in the drawing
of a policy: State Ins. Co. v. Arthur, 30 Pa. 331; Insurance
Co. v. Mahone, 21 Wall. 152; Combs v. Insurance Co., 43 Mo.
148 (97 Am. Dec. 383); Plumb v. Insurance Co., 18 N. Y. 392
(72 Am. Dec. 526); Insurance Co. v. Ives, 56 Ill. 402; Insur-
ance Co. v. Lewis, 30 Mich. 41; Insurance Co. v. McKee, 94 Ill.
494; Insurance Co. v. Fish, 71 Ill. 620; Insurance Co. v. Olm-
stead, 21 Mich. 246; Insurance Co. v. Eddy, 55 Ill. 213; 2
Wood on F. Ins., 832, 837, 850, 851, 866; May on Insurance,
§ 143; Van Schoick v. Insurance Co., 68 N. Y. 434; Bidwell
v. Insurance Co., 24 N. Y. 302; Smith v. Insurance Co., 89
Pa. 287; Eilenberger v. Insurance Co., 89 Pa. 464; Susq. Ins.
Co. v. Cusick, 109 Pa. 157.   (2) As to the plaintiff's owner-
ship and insurable interest in the goods: 1 Wood on F. Ins.,
643; Manhattan Ins. Co. v. Webster, 59 Pa. 227; Pittsburgh
Ins. Co. v. Frazee, 107 Pa. 521.

OPINION, MR. CHIEF JUSTICE PAXSON:

This was an action of debt in the court below upon a policy
of fire insurance issued by the appellant company to Stroud
Burson upon a stock of merchandise contained in a building
in Stroudsburg.   The policy was for the sum of $3,000, and
it was not denied that the loss exceeded that amount, nor was
it alleged that there was the slightest taint of fraud about the
transaction.   The defence of the company is purely technical.

Among the warranties and conditions set forth in the policy,
and to which the written contract is alleged to be subject, are
the following: If the assured is not the sole and unconditional
owner of the property; or, if the interest of the assured in the
property, whether as owner, trustee, factor, agent, or mortga-
gee, lessee, or otherwise, is not truly stated in this policy; or,

if any change take place in the title, interest, or possession of the property, etc., this policy shall become void, unless consent in writing is indorsed by the association hereon. It is proper to say here, that this policy, while not so in form, was practically a renewal of a former policy between the same parties, and covering the same stock of goods, which original policy contained no such condition. Upon this point, the uncontradicted evidence is that Mr. McIlhaney, the agent of the company, called at the store where the insured property was, and asked whether W. S. Flory (who had charge of the insurance) wished to continue the insurance. Mr. Flory replied that he did, whereupon he said: "I will make you another policy like the first one, only I will make it so that hereafter, if you continue, we will only give you a receipt, do not have to make a new policy for you." The only object of this change, apparently, was to enable the insurance to be renewed thereafter by receipt, instead of issuing a new policy for each renewal. It may well be questioned, under this state of facts, whether there was really any change in the conditions of insurance. It would certainly have been proper for the agent, when he proposed to give the assured a new policy "like the first one," to have informed him of any change of importance in the conditions. The assured had a right to suppose there was no essential difference between the policies, and the case does not come within the ruling in Susq. Ins. Co. v. Swank, 102 Pa. 17, where it was held that a person who accepts a policy, and retains it for sixteen months, without reading it, cannot, after enjoying its protection during all that time, defend against an assessment upon the ground that the policy was issued upon a different plan from the one which he had verbally requested. We think the learned judge was justified in admitting the first policy in evidence, and in his instructions to the jury thereon.

The principal defence set up by the company was that the assured was not the sole and unconditional owner of the property covered by the policy.

There are certain facts which I understand to be undisputed. They may be briefly stated thus : (*a*) That there was no written application; (*b*) that the original policy contained no warranty clause ; (*c*) that the assured had an insurable interest in the property destroyed; and (*d*) that the property destroyed

exceeded in value the amount for which it was insured.    Nor,
was there any dispute about the facts relating to the plaintiff's
title, or the manner in which he held the title, and effected the
insurance.    For convenience, I take them as I find them con-
densed in the charge of the learned judge: At the time the
policy of insurance was made, the plaintiff represented and stat-
ed to the defendant's agent that he had purchased the property
of Simeon Flory; that he had entered into an agreement with
W. S. Flory for the sale of the goods; that by the agreement
the goods were to remain in the same place where the defend-
ant had previously insured the same; that W. S. Flory was to
have the use of the goods in his business, and pay for such use
a rent equal to the annual interest on the amount paid by
Stroud Burson for the goods, and also to keep the same insured,
and keep up the stock to what it was when the plaintiff bought
the same, and when the last dollar of purchase money was paid
to the plaintiff he was to make a bill of sale to W. S. Flory,
but until the whole sum was paid the goods were to remain the
property of the plaintiff, and to be under his control; that the
defendant's agent, on this statement of the plaintiff's interest
made to him, said the proper way to insure the goods was in
the name of the plaintiff; that at the time of making said pol-
icy and the several renewals, the agent inquired whether the
same original arrangement continued, and was informed by the
plaintiff that it did, and that said W. S. Flory had made a pay-
ment or payments on the said agreement to the plaintiff; that,
the year before, said goods were insured by plaintiff in policy
No. 82,245, which expired on February 2, 1882, whereupon the
defendant agreed to insure the property for another year in a
policy like No. 82,245, with the explanation that thereafter the
same was to be continued by renewal receipts; that the interest
of the plaintiff in the goods mentioned in the policy was cor-
rectly stated to defendant's agent at the time of the original
contract of insurance, and, if the same was not correctly set
forth in the original policy, such neglect was the act of the de-
fendant; and that there was no subsequent change of title, in-
terest, or possession.

Nor, was there any dispute as to Thomas M. McIlhaney hav-
ing been the agent of the defendant company, with power to
act for said company in Stroudsburg and vicinity, in receiving

proposals for insurance, issuing and countersigning policies, assenting to assignments, collecting premiums, etc. It is true, the statement of the learned judge that the said agent was "clothed with more than the usual powers given by insurance companies to what are called local agents" was not only criticised by the learned counsel for the company, but was assigned as error: See eighteenth assignment. But if we concede that the power of the agent was too strongly stated by the court, Mr. McIlhaney had ample authority to bind the defendant. For the purposes of this case, we must consider Mr. McIlhaney as the company.

We have, then, the case of a person who goes to the company, and fully and candidly explains the condition of his title, and is informed by its officers or its agent, it matters not which, that the proper way to insure his property is in his own name, as owner. He takes out his insurance in the manner he was advised; pays the premium on it for years, and then, after his property is destroyed by fire, he is confronted by a clause in his policy requiring him to be the sole and unconditional owner of the property; a clause which was not contained in his first policy, and which he had no reason to suppose was in the policy which had been substituted for it, and which he was told by the agent was to be "like the other." Surely, if such a defence is to prevail, insurance has ceased to be an indemnity.

I am, however, unable to see why the plaintiff was not the sole and unconditional owner of the property insured, within the meaning of the policy. The evidence is not disputed that the entire legal title to it was in the plaintiff at the time the insurance was effected, and that by the very terms of the lease or bill of sale, by whatever name it may be called, from the plaintiff to Flory, it was stipulated that the ownership should remain in the plaintiff until the last dollar was paid. It was urged, however, by the company that this transaction was a legal fraud, with the effect of making the property liable to execution on the part of the creditors of Flory; in other words, that Flory was the real owner of the property, while the plaintiff only held a bill of sale, unaccompanied by possession, and therefore worthless in law. Upon this theory the defence has been principally constructed. That it will not bear examination is apparent. The insurance company is not a creditor of Flory. It has no

standing to assert that the transaction is a legal fraud. It is good between the parties; it is good against all the world, except creditors of Flory, if there be any, intended to be defrauded. As between the plaintiff and Flory, and as between the plaintiff and the insurance company, the title was in the plaintiff. The fact that Flory had made payments on account to the plaintiff did not give title pro tanto to Flory. This is because they had agreed that it should not; that until the last dollar was paid the title was to remain in the plaintiff. In the mean time the goods remained the property of the plaintiff, and when destroyed by fire the loss was his. He must hand over the goods to Flory when the last payment is made, or if that is not possible, owing to their destruction, he must return him the money he has paid. The contract between the plaintiff and Flory must be executed as they made it, so long as it is not interfered with by some one who has the right to call its validity in question. I have endeavored to show that the defendant company has no such right. In this view of the case, we do not think it was error to instruct the jury that they might find a verdict not exceeding the amount of the policy $3,000. See the twenty-first assignment. It is true this instruction is inconsistent with that contained in the answer to the defendant's eighth point, but, as no possible injury could have resulted to the defendant therefrom, we forbear further comment.

The first assignment alleges error in the admission of the testimony of Lewis M. Burson and W. S. Flory as to conversations with Thomas M. McIlhaney, the agent, at the time the insurance was effected. The ground of the objection was that the agent was dead, and the witness on the stand, W. S. Flory, was a party in interest. It is a sufficient answer to this assignment to say that it does not conform to the rules. Fortunately, in this instance, the omission has not prejudiced the defendant's case.

I notice nothing in the remaining assignments that is not covered by what has already been said.

                                        Judgment affirmed.