J. M. LINGENFELTER, Respondent, v. THE PHŒNIX INSURANCE COMPANY, OF HARTFORD, CONNECTICUT, Appellant.

Kansas City Court of Appeals, November 9, 1885.

1. INSURANCE—CONTRACT OF—ESSENTIALS OF AS TO VALIDITY.—It is not essential to the validity of a contract of insurance, that it should be evidenced by a written policy ; a parol contract is sufficient. Insurance is simply a contract "whereby one, for a consideration undertakes to compensate another if he shall suffer loss." May on Ins., sect. 1. The policy, in the absence of a contrary stipulation, and understanding, during the negotiation, is only *evidence* of the contract.

2. PLEADING—SUFFICIENCY OF AVERMENTS BEFORE AND AFTER VERDICT.—Where a petition is defective for lack of certainty or definiteness, the remedy is by demurrer or motion. There is a marked

difference between a failure to state the constitutive facts, and an imperfect statement of the facts. The former is never waived, while the latter is cured by verdict. *Edwards v. R. R. Co.*, 74 Mo. 122.

3. ACTIONS—ELECTION BETWEEN—CASE ADJUDGED.—The suit in this case is an action at law, tried by both parties as such. The plaintiff might have proceeded by bill in equity to compel the execution of the policy, or to have the case so treated as if one had been delivered ; or, he could sue on such a state of facts as are disclosed in this record, on the contract of insurance ; and this suit is based on such a contract, and not on an executed policy of insurance.

4. AGENCY—DELEGATED POWER NOT TRANSFERABLE, BUT AGENTS MAY EMPLOY CLERKS.—An agent has no power to delegate his agency to another, or to sub-let it. But he may employ clerks and sub-agents, whose acts, if done in his name, and recognized by him, either specially, or according to his usual method of dealing with them, will be regarded as *his acts*, and, as such, binding on the principal.

5. TITLE—INSURABLE INTEREST—OWNERSHIP.—The indefeasibility of the title is not the criterion of an insurable interest ; an expectancy coupled with a present existing title is enough. Ownership at the time the loss occurs, is sufficient. See *Gaylord v. Ins. Co.*, 40 Mo. 17.

APPEAL from Nodaway Circuit Court, HON. H. S. KELLEY, Judge.

*Affirmed.*

Statement of case by the court.

The defendant, a foreign insurance corporation, in January, 1882, and long prior, had established, at Maryville, in Nodaway county, in this state, an agency under the management and control of one William H. Hubert. His power of attorney, dated February 27, 1871, in the form of a letter, authorized him to receive proposals for insurance against loss by fire, and to make insurance policies of said company, to be countersigned by said agent, and to renew the same ; to assent to assignments, or transfers, and to do all things and matters pertaining to said appointment that shall be given him in charge by the company. As such general agent he did business for said company in said county. Burlington Junction

is a town of said county about fifteen miles from Maryville. The company, at the time in question, had no local agent at Burlington Junction. About June or July, 1881, Hubert, being anxious to have the defendant company specially represented, and its interests promoted at Burlington Junction, requested one W. A. Burdick to act for him there. Aside from the evidence of said Burdick, as to certain parol instructions, etc., given him by Hubert, on the fifteenth day of July, 1881, Hubert sent him the following letter:

"*Mr. Burdick,*

"DEAR SIR: I send you applications, also Phœnix, of Hartford. If Gay has not a recording agency for the Phœnix, fill out Phœnix applications and send to me, same as you would for any other company. I send you small note book, with changes marked in ink. Do the best you can until opportunity offers for full agency, then I will help you all I can by way of recommend.

"Respectfully yours,

"W. H. HUBERT.

"P. S. When you fill out applications, sign them as solicitor for me."

After which, Burdick solicited applications for Hubert in behalf of the defendant company, and sent him several applications, which were accepted by Hubert, and policies issued thereon.

Burdick and Hubert differ in their testimony as to whether Hubert reserved the right, and, in fact, did make changes in the applications before issuing the policies, as to the date from which the risk attached, Burdick contending that Hubert accepted them as specified in the applications, and Hubert contending that he made changes.

After some negotiations, on the thirtieth of January, 1882, plaintiff was induced to make application through Burdick for insurance in the defendant company, which resulted in an application being filled out on one of the blanks furnished by Hubert. This application specified

the amount of premium, and stated that the risk should run for one year, beginning at noon, January 30, 1882. The premium was paid partly in money to Burdick, and partly in plaintiff's due bill—Burdick giving a receipt in full for the premium. This application is signed: "W. H. Hubert, agent." Burdick mailed it to Hubert so that, by due course of mail, it should have reached Hubert by one or two o'clock, p. m., January 31. But Hubert testified that he did not receive it until about five o'clock, p. m., of that day.

Burdick also testified that it was his custom to remit the premiums to Hubert the last of the month following its receipt.

The storehouse, which was the subject of the insurance, burned down on February 1, following, about one or two o'clock, a. m. Hubert claims that he did not examine the application and pass on it until the morning of the first of February, after the fire, and before he had notice of the fire. The application he forwarded to defendant, and when introduced at the trial had the following endorsements thereon, made by Hubert:

"Commences February 1, 1882. Expires February 1, 1883. W. A. Burdick, Solicitor, Burlington Junction. W. H. Hubert, agent, Maryville."

There was much evidence, as to other matters, the material portions of which are noticed in the opinion.

The defendant refusing to settle the loss, on the twenty-ninth of May, 1882, the plaintiff brought this action. The petition makes the following averments:

"1. That defendant is a corporation, duly created by and under the laws of Connecticut.

"2. That on, to-wit, the thirtieth day of January, A. D., 1882, plaintiff was the owner of lot number thirteen (13), in block number nineteen (19), in the town of Burlington Junction, in Nodaway county, Missouri, and also of the improvements thereon, to-wit, a two-story metal roof frame store building, with a one-story frame wareroom at the rear end of same; and was the owner

thereof at the the time of its insurance and destruction by fire, as hereinafter mentioned.

"3.   That on the thirtieth day of January, A. D., 1882, the plaintiff applied to defendant, through their agent in said Nodaway county, Missouri, for insurance against loss or damage by fire, upon said frame store building, situated on lot aforesaid, in said town of Burlington Junction, in Nodaway county, Missouri, and the defendant, by their said agent, then and there agreed to become an insurer on said metal roof frame store building, for one year from that day, for one thousand dollars, at a premium of twenty-seven dollars and fifty cents, and that the said defendant would execute and deliver to plaintiff a policy, issued by them on such risks, for the sum of one thousand dollars, for the term of one year from said day.

"4.   That plaintiff then and there paid to defendant said premium, to-wit, the sum of twenty-seven dollars and fifty cents, pursuant to said agreement and insurance as aforesaid.

"5.   That it was then and there agreed between the plaintiff and the defendant, that the said insurance should be binding on the defendant for the term of one year from the time of the receipt of said premium, for the sum of one thousand dollars, and the defendant then and there, in consideration of the premises, agreed with the plaintiff to execute and deliver to him, within a reasonable and convenient time, a policy in the usual form of policies issued by said defendant, insuring said building in the sum of one thousand dollars against loss or damage by fire, the said insurance to commence at noon of said day, the time of the receipt of said premium, and to continue for the said term of one year.

"6.   That after the insurance so made, and after the said promise to execute and deliver a policy in conformity thereto and within the said term of one year, for which plaintiff was so insured, to-wit, on the first day of February, A. D., 1882, the said building mentioned and so insured, was totally destroyed by fire.

"7.   That the plaintiff duly fulfilled all the conditions of said agreement on his part, and faithfully complied with all the requirements of said insurance contract; that he gave the defendant due notice and proof of the fire loss aforesaid, pursuant to the terms of their contract with plaintiff, and demanded payment of said sum of one thousand dollars, the amount of said loss covered by the insurance aforesaid.

"8.   That the defendant has failed and refused, and still fails and refuses to pay said sum of one thousand dollars, due plaintiff by reason of said loss by fire, under said contract of insurance aforesaid.

Wherefore plaintiff prays judgment for the sum of one thousand dollars, with interest, and for costs of suit."

The answer was a special denial of each material allegation of the petition, except as to the defendant being a non-resident corporation.

The cause was tried before the court sitting as a jury.   At the conclusion of the evidence the court gave the following declarations of law, as requested by plaintiff:

"1.   It is admitted that the defendant is a corporation, as alleged in the petition of plaintiff."

"2.   If the court finds from the evidence in this case that one W. H. Hubert, of Maryville, Nodaway county, Mo., was the agent of defendant, on the thirtieth day of January, A. D., 1882, and for a long time prior thereto, and since, authorized and empowered to receive proposals for insurance against loss or damage by fire, and to make insurance by policies of defendant, to be countersigned by himself as agent, and to renew the same, to assent to assignments or tranfers, and to do all things and matters necessary, pertaining to such authority and power, within the territory of his agency ; and if the court finds further, that the town of Burlington Junction, in Nodaway county, Mo., was, at said date, within the territorial limits of said agency of said W. H. Hubert; and, if the court further finds, that said

W. H. Hubert, as such agent, did authorize one W. A.
Burdick to solicit applications for insurance for de-
fendant, at said town of Burlington Junction, in the
name of, and as solicitor for, said W. Hubert, as the
agent of defendant, to be by said Burdick forwarded to
said agent, Hubert, for issuance of policy of insurance
in pursuance of such application; and, if the court
further finds, that said W. A. Burdick, as such solicitor
for, and in the name of said W. H. Hubert, on the date
aforesaid, did solicit and obtain the application of plain-
tiff, offered in evidence in the trial of this case, and
collected for Hubert the premium therein stipulated and
agreed upon, for insurance on plaintiff's said premises,
for one year from noon of said day, in the sum of one
thousand dollars, and that said application for insurance
was immediately forwarded to W. H. Hubert, at Mary-
ville, Mo., and was received in due course of mail, to-wit,
on the thirty-first day of January, 1882, the court should
find for plaintiff, in the sum of one thousand dollars,
with interest at the rate of six per cent. per annum, from
the date of the commencement of this suit—provided, the
court further finds from the evidence, that defendant's
agent, W. H. Hubert, accepted said application for in-
surance, notwithstanding the court may find that said
Hubert, without the knowledge or consent of plaintiff,
changed the date of the commencement of said insur-
ance, from January 30, 1882, to February 1, 1882; and,
provided further, that the court finds, that said prop-
erty of plaintiff was, on the morning of February 1,
1882, totally destroyed by fire, without the fault or pro-
curement of plaintiff, and was, when so insured, of the
value of $1,500, or more."

The court also gave the following declarations of
law, at defendant's instance:

"1. It is admitted by the defendant, that W. H.
Hubert was the agent of defendant, empowered by
defendant to receive applications for insurance, and
collect premiums thereon, and to countersign and de-
liver policies of insurance to applicants for, and in

behalf of defendant. But if the court finds from the evidence that one W. A. Burdick had no greater authority from said agent, Hubert, than to act as his solicitor, by receiving applications for insurance in the company of defendant, and collecting premiums thereon, and forwarding such applications to said agent, subject to his approval or rejection, and that, as such solicitor, said Burdick received the applications for insurance for plaintiff, offered in evidence, and forwarded the same to said Hubert, who did not approve the same, except for the insurance thereon by a policy of defendant to commence at 12 o'clock, noon, on February 1, 1882, then the court will find for defendant."

"2. If the court finds from the evidence that W. A. Burdick, at the time he received the application of plaintiff, offered in evidence for insurance in the company of defendant, had authority from defendant, or its agent, W. H. Hubert, to take such applications and collect the premiums thereon, but had no authority from defendant, or said agent, to countersign and deliver to plaintiff a policy of insurance of defendant on such application, then said Burdick had no power to bind defendant by any agreement made by him with plaintiff, as to the issuance of such policy, or as to the time when such policy should take effect."

"6. If the court finds from the evidence that W. A. Burdick had no authority from defendant, or its agent, W. H. Hubert, except to receive applications of insurance, and collect the premiums thereon, and transmit the same to said agent, W. H. Hubert, for his approval, or rejection; and, that on the thirtieth day of January, 1882, said Burdick received the application of plaintiff, read in evidence, and sent the same by mail to said Hubert, at Maryville, where said Hubert received the same late in the evening of January 31, 1882, after business hours, and (it) was not examined by him till after the fire, on the morning of February 1, 1882, then, what said Hubert said or did, at said last named date,

after said fire, could not bind defendant, or make valid any contract of insurance against defendant."

The following instructions asked by defendant were refused :

" 3. If the court finds, that at the destruction by fire of the building described in plaintiff's petition, the plaintiff had no deed delivered to him for said building, and the lot on which it was situated, but received said deed, and paid for said building and lot after said destruction by fire had occurred, then the court will find for defendant."

" 4. Although the court may find from the evidence that W. H. Hubert was the agent of defendant, appointed as such by the commission read in evidence, with express power to approve applications, collect premiums, and countersign and issue policies for defendant, and may further find that said Hubert empowered one W. A. Burdick to receive applications and collect premiums, in his name, and sign his, Hubert's, name to the application, and forward the same to said Hubert, yet such authorization would not empower said Burdick to make an agreement in behalf of Hubert, agent, with plaintiff, binding defendant to issue to plaintiff a policy of insurance, or binding defendant to become an insurer of the property of plaintiff in any manner, or from any date named in such agreement; and, although the application given in evidence by plaintiff was received by said Hubert before the property was destroyed by fire, but he did not issue a policy until after the fire, and had dated the insurance to commence after the fire, but in ignorance of the fact of the fire, the finding should be for the defendant."

" 5. The commission read in evidence, appointing W. H. Hubert, as agent of defendant, to issue policies of insurance for defendant, empowered said agent, in the performance of his duties, to exercise his skill, judgment, and discretion, in determining from the nature and situation, value of the property to be insured, described in the application of plaintiff, read in evidence, whether

he would, or would not insure said property in the company of defendant, and said Hubert could not delegate said power to W. A. Burdick, so as to authorize said Burdick, to bind defendant by any contract of insurance, made by him with plaintiff ; and, unless the court finds, from the evidence, that defendant, by its act and course of dealing, held out to plaintiff, or to the public, that said Burdick had authority to issue its policies, or make agreements binding on defendant, to insure the same, the court will find for defendant. ''

The court found the issues for plaintiff. From its judgment the defendant prosecutes this appeal.

EDWARDS & RAMSEY, for the appellant.

I. The court erred in overruling the objections of defendant to the introduction of any evidence by plaintiff because, (1) The petition does not state facts suffi-cient to constitute a cause of action. (2) It does not allege any breach by defendant of the alleged contract, nor refusal of defendant to issue the policy described ; nor does it set forth what the terms and conditions of said policy were. (The *first* of these objections was also considered. and overruled on motion in arrest of judgment). These objections were interposed in proper time, and had not been waived by failure to raise the same by demurrer or answer. *Rummel v. Otis*, 60 Mo. 365 ; *State to use, etc., v. Matson*, 38 Mo. 489 ; *Syme v. Steamboat*, 28 Mo. 335. *Andrews v. Lynch*, 27 Mo. 167.

II. Whether the action be at law or equity the objections are well taken. The only contract set forth in the petition is that defendant *agreed* to issue a policy to plaintiff. There is no averment that any demand was made of defendant to issue the policy before suit was brought, or that defendant refused to issue the policy, or that defendant failed or refused to comply with the agreement alleged, in any manner. The terms and conditions of the policy are not set out. Petition states no cause of action. Angell on Ins., sect. 37 ; May on Ins., sect. 565.

III. Instruction numbered two asked by plaintiff was improperly given. To constitute an acceptance of a proposal so as to make a binding contract, no *alteration* can be made in the proposal by the acceptor, but it must be assented to in the precise terms in which it is made. 1 Parsons on Contracts (5 Ed.) 475, 483; Angell on Fire and Life Ins., sect. 34; *Lungstrass v. Ins. Co.*, 48 Mo. 201; *Eads v. City of Carondelet*, 42 Mo. 113. The alteration made by the defendant's agent was never assented to by plaintiff, *i. e.*, as to the beginning of the risk, and defendant's agent did not accept the application as made, and there is no evidence contradicting his statement to that effect. An application for insurance is not a contract, and between the time of making and acceptance, no contract of insurance exists. *Otterbein v. Ins. Co.*, 57 Iowa 274. Section 6009, Revised Statutes, does not apply where no policy has been issued, and the actual loss sustained by the fire, not the *value* of the building when insured, is the measure of damages.

IV. The instructions asked by defendant were wrongfully refused. There was a misrepresentation of a material fact, which would avoid the contract even if made; and the law of agency applicable to the case was correctly enunciated in the fourth instruction. *Stockton v. Ins. Co.*, 33 La. Ann. 577; *Critchell v. Ins. Co.*, 53 Iowa 404; *Armstrong v. Ins. Co.*, same court, Ins. Law Journal, 1883 (Sept.); 16 N. W. Reporter 1, 94.

V. The judgment is against the law and the evidence.

Ira K. Alderman, for the respondent.

I. The petition was sufficient. It alleged a contract of insurance complete and existing, and based on terms fully agreed upon, a fire loss under the contract; and a demand on defendant and refusal to pay loss. May on Ins., sects. 1, 43, 44, 565 (2 Ed.); *Baile v. Ins. Co.*, 73 Mo. 371.

II. There is a distinction between a contract to issue policy and one to insure. An insurance contract

may be by parol.    May on Ins, sects. 23, 45 ; *Ins. Co. v. Kelley*, 24 Ohio 345 ; *Henning v. Ins. Co.*, 47 Mo. 425.

III.    The issues were of fact, and by agreement were submitted to the court, sitting as a jury, and only *the law is* reviewable in this court.    *Early v. Elliott*, 43 Mo. 289 ; *Wilson v. R. R.*, 46 Mo. 36 ; *Gould v. Smith*, 48 Mo. 43.

IV.    Plaintiff owned an insurable interest.    It is not necessary to show an absolute legal title.    Such interest may exist in the absence of any present property.    May on Ins., sect. 76 ; *Warren v. Ins. Co.*, 31 Iowa 465 ; *Franklin v. Ins. Co.*, 43 Mo. 495.

V.    A contract by a clerk or sub-agent, where such duties are intrusted to him, is the contract of the principal and binding on him.    May on Ins., sect. 122 ; *Bodine v. Ins. Co.*, 51 N. Y. 117 ; *Ins. Co. v. Fahrenkrug*, 68 Ill. 463 ; *Beebe v. Ins. Co.*, 25 Conn. 51.

VI.    The instructions given for plaintiff were proper, and the question is mainly the power of the agent of defendant to act through a sub-agent, so as to bind defendant.    The law declared by them is sustained by the authorities.

PHILIPS, P. J.—I.    The first question, in order, raised by appellant is the sufficiency of the petition. The objections urged against it are, that it does not allege any breach by defendant of the contract, nor any refusal to issue the policy, nor does it set out what the conditions of the policy are.

It will meet and dispose of much that is said in argument by appellant, to state here, that this action is not based on an executed policy of insurance.    It is based upon a contract of insurance, performed by the plaintiff, and which the defendant refuses to observe by paying the conceded loss.    "A contract for insurance is one thing, and a contract of insurance is another." Wood on Ins., sect. 10.

It is not essential to the validity of a contract of insurance that it should be evidenced by a written policy.

A parol contract is sufficient. *Henning v. U. S. Ins. Co.*, 47 Mo. 432; *Baile v. Ins. Co.*, 73 Mo. 73; May on Ins., ch. 2; Wood on Ins., sect. 4.

Insurance is simply a contract "whereby one for a consideration undertakes to compensate another if he shall suffer loss." May on Ins., sect. 1. Like any other contract, its completeness depends simply on the question, whether the minds of the contracting parties have met as to the subject matter to be insured, the amount and mode of payment of the premium, and the duration of the risk. The policy, in the absence of a contrary stipulation and understanding, during the negotiations, is only evidence of the contract. "It is but the form and embodiment, the expression and evidence, of what has already been agreed upon, adding nothing thereto, and detracting nothing therefrom. And whether issued immediately upon the arrival at a mutual understanding, or subsequently, before the loss or after the loss, with or without knowledge, or not issued at all, the obligations of the parties are not affected. If the insurers refuse  *  *  * to issue the policy because a loss has intervened, or any other change has taken place, which would not be a defence under the policy if that had been delivered, they will not be allowed by the law to take advantage of the fact that no policy has been issued. * * * An accepted application imports an agreement to issue the policy in execution of the contract." May on Ins., sect. 43.

The petition was amply sufficient to advise the defendant as to the real ground of complaint, and the relief sought. It stated the essential facts out of which the liability arose. This was certainly good after verdict. If the petition was defective for lack of certainty or definiteness, the remedy was by demurrer, or motion. The defendant did not demur. There is a marked difference between a failure to state the constitutive facts and an imperfect statement of the facts. The former is never waived, while the latter is cured by verdict. *Edwards v. R. R. Co.*, 74 Mo. 122.

II. This is an action at law tried by both parties as

such. The plaintiff might have proceeded by bill in equity to compel the execution of the policy, or to have the case so treated as if one had been delivered. Or he could sue on such a state of facts as are disclosed in this record, on the contract of insurance.

III. Counsel have discussed many questions suggested by the record, and they have exhibited much research after adjudicated cases. But it does seem to me, in view of the instructions given by the court at the instance of both parties, that the matter at issue is more one of fact than law.

There is no question of the general agency and power of Hubert. His powers were plenary to solicit and receive applications for insurance, to issue policies, and to do all things pertaining thereto. The sum of the declarations of law made by the court is to this effect: If this agent authorized Burdick for him and in his name to solicit applications and collect premiums for him, and Burdick accordingly did this, and obtained the application in question, received the premium, or its equivalent, and forwarded the application to Hubert, who received and approved the same before the fire, this bound the company.

There is no occasion for the application or discussion of the maxim: *delegatus non potest delegare;* for it may be conceded that Hubert had no power to delegate his agency to another or to sub-let it. But he may employ clerks and sub-agents, whose acts, if done in his name and recognized by him, either specially or according to his usual method of dealing with them, will be regarded as his acts, and as such binding on the principal. *Bodine et al. v. Exchange Ins. Co.*, 51 N. Y. 123; 4 Waite's Ac. & Def. 32.

The letter of Hubert to Burdick authorized him in his behalf to solicit applications and to collect premiums, and to make out applications in his name. Burdick testified that he had been in the habit of so doing, and that Hubert issued the policies accordingly, making the date of the risk conformable to that expressed in the applica-

tion. He does not claim that he was acting for and on behalf of the defendant by any delegation of authority from it, but for and on behalf of Hubert, and through him. He further testified that Hubert never, until after this loss, stated to him that he either reserved the right to, or in fact did change the date when the risk should attach. It would perhaps be tenable to say, that if he in fact did so deal with the applicants at Burlington Junction through Burdick, it would be the same as if he had done so *propria personæ*. But the instructions go further, in the interest of the defendant, and declare that it must also appear that Hubert received and approved this application before the loss occurred. If he did so receive and accept it, that concluded the contract of insurance as much so as if he had issued the policy on the thirtieth day of January, to take effect from that date. *May Ins., supra.*

It is true that Mr. Hubert testified that he did not accept this application before the loss; but there are facts and circumstances in evidence from which a jury might not unreasonably have found the fact to be otherwise. In the first place, the application by the usual course of mail, would have reached him by one or two o'clock, p. m., January 31. He was at home, and being a man of affairs, actively engaged in this business, and other matters, the presumption would not be unreasonable, but fair, that he got his mail promptly and opened and read his letters on the instant. He admitted that he did receive this letter and application about five p. m. on the thirty-first. He gives no satisfactory reason for this delay. Then, to further escape the reasonable presumption that a business man would, with little delay, open and read his letters and papers, especially on so important a matter as an application for insurance, when a night's delay might be ruinous to the applicant, he says he did not examine this letter and application until after he had enjoyed a night's repose, and plaintiff's house and property had gone to ashes (?). His excuse is most flimsy and unsatisfactory, to say the least of it. It was unusual

and out of the ordinary course of business. He was directly contradicted by the testimony of Mr. Anderson, who testified that Hubert on the morning of the first of February said the only reason he did not issue the policy on the thirty-first was for want of time or pressure of business. If that was so he had accepted the application, before the fire. All that remained to be done by him was to issue the policy. In such case the *aggregatio mentium* has taken place, and the contract is obligatory. *Keim v. Ins. Co.*, 42 Mo. 41-42.

There are other important facts indicating an acceptance. The witness Seyster, testifying on behalf of defendant, on cross-examination, stated that Hubert, on the morning of February 1st, after the fire, was objecting to Mr. Anderson, representing plaintiff, on account of the deed plaintiff had to the property, stating that if the deed was all right the company would pay, etc. He was not objecting on account of the non-acceptance of the risk. It is further observable, that on the morning of the fire, and before he had heard of it, as he now claims, he was making out the policy, and of course had previously approved the application; but remarkably enough, the policy which he says he drew up, as produced by him at the trial, had the risk to begin at noon of that day—February 1st—instead of noon January 30th, as expressed and stipulated in plaintiff's application when his sub-agent took plaintiff's money. Burdick testified that Hubert, in none of the interviews, made any objection about the non-payment to him of the premium. If by the course of his dealing with Burdick the premiums collected by Burdick were usually transmissible at the end of the month, the payment made by plaintiff was good. *Lungstrass v. Ins. Co.*, 48 Mo. 206.

Under the instructions, applicable to the case, the material issue was one of fact, and was found against the defendant by the court sitting as a jury. On the conflict of testimony the finding of the jury is conclusive on this court. *Gregory v. Chambers*, 78 Mo. 298.

IV. It is further objected by appellant that the de-

fendant did not at the time of affecting the insurance
have the fee simple title to the property insured, as he
represented in his application. A careful examination
of the evidence satisfies us that this objection is not sus-
tained by the facts. The plaintiff had been negotiating
for the purchase of this property some time prior to Jan-
uary 30, 1882. On the twenty-fourth of January the
trade was completed, and a deed was made, but some
question was raised by the purchaser as to a stipulation
about the taxes. The purchase money was withheld
until this could be rectified, and on the day of the con-
tract of insurance between Burdick and plaintiff, tele-
graphic information was received that the deed was in
bank all right, and thereupon Burdick issued the appli-
cation.

The deed was not taken from the bank perhaps until
a day or two thereafter, as the parties had to go some
distance to the bank for it.

The deed being held in escrow for the payment of the
purchase money, when the payment was made, which
was prior to the first of February, the title passed. Be-
sides, the plaintiff was placed in possession of the prop-
erty on the thirtieth of January, and the leases thereon
were turned over to him.

These facts put in him, at least, the full equitable
title, and entitled him to maintain an action for the legal
title. This, on well considered authority, was a com-
pliance with the stipulation or representation made in
the application. If he were the owner at the time the
loss occurred this is sufficient. *Gaylord v. Ins. Co.*, 40
Mo. 17 ; *Insurance Co. v. Haven*, 5 Otto 242. There
was no fraud practiced or intended to be practiced, in
this respect, by plaintiff on the defendant. His title was
good to the property when the loss occurred, and the
defendant should perform its contract.

The judgment of the circuit court is affirmed. All
concur.