CAMDEN FIRE INS. ASS'N v. WANDELL.
(No. 7374.)

(Court of Civil Appeals of Texas. Galveston. April 17, 1917.)

1. INSURANCE ⊚⇒378(2) — CONSUMMATION OF CONTRACT—"INSURANCE AGENT."

A former agent of an insurance company to whom application for renewal of a policy is made, who turns application over to an agent for another company and collects the premium, is in law the agent for such company under Vernon's Sayles' Ann. Civ. St. 1914, § 4961, providing that any person who takes or transmits other than for himself any application for insurance or any policy of insurance to or from an insurance company, or shall collect or transmit any premium or do any act in the making or consummating of any contract of insurance other than for himself, shall be held to be the agent for the company for which the act is done.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 971, 973, 974, 977–997.

For other definitions, see Words and Phrases, First and Second Series, Insurance Agent.]

2. INSURANCE ⊚⇒379(2)—ACTION ON POLICY—DEFENSES—ESTOPPEL.

Where the agent of an insurance company knew the facts in regard to a policy and caused it to be written with an erroneous ownership clause, the company was estopped from setting up such clause as a defense in an action on the policy.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1006.]

3. INSURANCE ⊚⇒373(1) — REFORMATION OF POLICY—ESTOPPEL.

In a suit to reform an insurance policy erroneously stating the name of the owner of the property insured, defendant company was estopped to deny the validity of the policy when its agent, with knowledge of the true ownership, issued the policy in the name of the estate of a former owner and collected the premium therefor.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 947.]

4. INSURANCE ⊚⇒665(2)—ACTION ON POLICY—EVIDENCE.

In an action on an insurance policy wherein the name of the owner of the property insured was erroneously given, evidence *held* to support a finding that the contract of insurance was in fact entered into between plaintiff and defendant company.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1709.]

5. INSURANCE ⊚⇒624(1)—ACTION ON POLICY—PARTIES PLAINTIFF.

In an action on an insurance policy, wherein the defendant alleges that the policy is payable in case of loss to a mortgagee, a judgment for plaintiff was not erroneous, since the assured under the policy may maintain an action thereon in its own name, although the policy be payable to another.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1557, 1558, 1562, 1563, 1567.]

6. INSURANCE ⊚⇒646(1)—ACTION ON POLICY—BURDEN OF PROOF.

In an action on an insurance policy, wherein defendant alleged that losses were payable to the mortgagee, the burden was upon it to show that plaintiff did not have an interest sufficient to support the action.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. §§ 1555, 1645–1649.]

7. INSURANCE ⊚⇒640(1)—ACTION ON POLICY—PLEADING.

In an action on an insurance policy, wherein defendant company claimed a reduction of the amount of loss because of a coinsurance clause, defendant was not entitled to such reduction where it did not plead the clause nor prove facts showing it was entitled to the reduction.

[Ed. Note.—For other cases, see Insurance, Cent. Dig. § 1609.]

Appeal from Galveston County Court; George E. Mann, Judge.

Action by A. H. Wandell against the Camden Fire Insurance Association. Judgment for plaintiff, and defendant appeals. Affirmed.

Geo. G. Clough, of Galveston, for appellant. Williams & Neethe, of Galveston, for appellee.

LANE, J. This suit was instituted by plaintiff, A. H. Wandell, against defendant, Camden Fire Insurance Association, to recover the sum of $345 under the terms of a policy of storm insurance issued by the defendant company.

Plaintiff, in substance, alleges that on the 11th day of April, 1914, for a consideration of $8 paid by him to defendant, the defendant agreed and bound itself to insure plaintiff's certain building against damage by storm, etc., to the amount of $1,000; that in reducing said agreement to writing defendant, by mistake, erroneously inserted therein the name "Estate of F. C. Williar, Decd.," instead of the name of plaintiff, and that such mistake was not discovered by plaintiff at the time such written contract was delivered to him by defendant; that said contract is evidenced by defendant's policy No. 15594, and the contract is truly expressed therein, with the exception of the aforesaid mistake, made by the person who reduced the same to writing; that plaintiff relied upon defendant to have the contract properly reduced to writing and was free from fault or negligence in failing to discover such mistake. He alleges that the building insured was damaged by storm in the sum of $345 while said policy was in force and effect, that plaintiff has demanded of defendant payment of such loss or damage, and that defendant has refused to make such payment, and denies that it is liable to plaintiff in any sum whatever, all to plaintiff's damage in the sum of $345. His prayer is that said contract be so reformed as to make it evidence the true contract and agreement between plaintiff and defendant, and that plaintiff recover from defendant the amount of his damages.

By answer defendant denied all the allegations of plaintiff's petition.

There was evidence sufficient to show the issuance and delivery of the policy as alleged by plaintiff, and that the building insured sustained damage in the amount found by the trial court; that at the time said contract for insurance was entered into between plaintiff and defendant plaintiff was the owner of the building insured, and that he had been the owner of said building for a long time prior to the making of said contract and had lived therein for more than one year prior to making said contract; that plaintiff owed about $1,400 of the purchase money on the premises on which said building was situated, which was held by the Real Estate Loan Company; that at the time he purchased the property there was a storm policy on it, which was made payable to said loan company "in so far as their interest appeared," and which was in possession of said loan company; that plaintiff was notified that said policy had expired, and asked for a renewal of the same. He learned that one E. E. Rice was the insurance agent who issued said policy, and he called on Rice for a new policy; that Rice mentioned the fact that the property belonged to F. C. Williar when the last policy was issued, and plaintiff told him that he had bought the property and wanted the new policy in his name; that plaintiff told Rice the old policy was in the possession of said loan company, and that when he got the new policy he should deliver the same to said loan company; that the new policy, the one involved in this suit, was issued in the name of "Estate of F. C. Williar, Decd.," instead of the name of plaintiff, and was made payable to the loan company, in so far as its interest appears, and was delivered by Rice to said loan company as he was directed to do by plaintiff; that plaintiff was notified by the loan company that it had received the policy, and plaintiff gave his check for $8, the amount of the premium, to Rice, who collected the same and paid it over to the defendant company, and it paid Rice a commission for procuring the same; that plaintiff never saw the policy until after the storm which damaged his building.

E. E. Rice testified that he was not the agent of the defendant company at the time he applied for the renewal policy on the property in question, nor when the policy was issued, that he was an agent for the Phœnix Insurance Company of Brooklyn, and wrote storm insurance, but that his company had ceased to write storm insurance in Galveston at that time, and that he had to place said renewal policy with another company, and that he placed the same with Seinsheimer & Co., agents of the defendant company, who, in behalf of their company, issued said renewal policy in the name of "Estate of F. C. Williar, Decd."; that he handled the matter as a broker and received a commission for his services; that he knew the loan com-

pany held a mortgage on the property insured and that the policy was made payable to it when it was handed to him; that he thought that Mr. Lovenberg instructed him to have the policy renewed, but that he was not certain, but he knew that he received the check of plaintiff for the premium, and that he cashed the same, but had no recollection of plaintiff instructing him to renew the policy, but he might have done so.

There was other testimony, but we think that above stated is sufficient to clearly present the issues involved in this appeal.

The trial court, to whom the case was submitted without a jury, rendered judgment for the plaintiff for the sum of $335. From this judgment defendant has appealed.

By appellant's first and second assignments he insists:

First. That "the court erred in rendering judgment for the plaintiff and in not rendering judgment for the defendant, because the undisputed proof and the admissions of the plaintiff show that the policy sued on was not issued to the plaintiff, but was issued to the estate of F. C. Williar, and that the same was not transferred to plaintiff."

Second. That "the court erred in rendering judgment for the plaintiff and in not rendering judgment for the defendant, because the undisputed proof shows that the mistake, if any, in the issuance of the policy was the mistake of the plaintiff, and not the mistake of the defendant, and that the defendant had no knowledge whatever of such mistake and was not a party thereto."

[1] E. E. Rice was agent for defendant company in procuring the renewal policy. Article 4961, Vernon's Sayles' Civil Statutes; Virginia Fire & Marine Ins. Co. v. Cummings, 78 S. W. 716; R. C. L. vol. 14, p. 875, § 48; St. Paul Fire & Marine Ins. Co. v. Sharer, 76 Iowa, 282, 41 N. W. 19; Lingenfelter v. Phœnix Ins. Co., 19 Mo. App. 252.

[2] Defendant's agent knew the facts relative to the ownership of the property insured, or at least there was evidence sufficient to support a finding that he did, and, so knowing, accepted the premium and caused the policy to be written containing the clause of ownership, and cannot now set up the fact that the ownership is erroneously stated in the policy to defeat the collection of the insurance. The knowledge of the agent so acting for the company is the knowledge of the company itself, and it is estopped from setting up the clause in which the ownership is erroneously stated as a defense. Fire Ins. Co. v. Laning, 31 S. W. 681, at page 683, and authorities therein cited; Burson v. Fire Association, 136 Pa. 267, 20 Atl. 401, 20 Am. St. Rep. 919; Phœnix Ins. Co. v. Tucker, 92 Ill. 64, 34 Am. Rep. 106; Crescent Ins. Co. v. Camp, 71 Tex. 503, 9 S. W. 473.

[3] The court did not err in reforming the policy so as to make it evidence the true contract made between plaintiff and defendant, through its agent, and in rendering judgment for plaintiff. The company is estopped to deny the validity of the policy on the

grounds that the ownership was not as therein stated, when its agent, with knowledge that the property belonged to plaintiff, issued the policy in the name of the estate of one who formerly owned the same, and took the premium. Insurance Co. v. Cummings, 78 S. W. 378; Ætna Ins. Co. v. Brannon, 99 Tex. 391, 89 S. W. 1057; Delaware Ins. Co. v. Hill, 127 S. W. 283; Joyce on Ins. § 3510.

We cannot better state our conclusions than they are stated in the able argument in appellee's brief, which we here adopt as our own, on the matters presented by appellant's first and second assignments.

[4] That the evidence detailed in the foregoing statement is sufficient to support a finding that the contract of insurance evidenced by the policy sued upon was in fact entered into by appellant with appellee is apparent. Should the testimony of Rice to the effect that he had no recollection of having agreed to procure the policy for the appellee, and in his name, be treated as contradictory of appellee's positive testimony that such an agreement was made between them, nevertheless appellee's testimony is clearly sufficient to establish such agreement, and, the trial court having found in his favor, this court will under the familiar and well-established rule refuse to disturb such finding. That would be true even if the testimony of Rice raised a direct conflict with that of appellee, but we think it clear no such conflict exists. When properly analyzed, Rice's testimony amounts to nothing more than if such an agreement was made with appellee he did not recollect it. He would not directly deny that it was made.

It then being true that appellee in fact applied for the policy, and it was agreed that it should be issued to him in his name, it necessarily follows that the name inserted in the policy was placed there through mistake of the parties. That such mistake was mutual, we think, is unquestionable. For certainly appellee in accepting and paying for a policy for which he had applied on his own property did so under the mistaken belief that he was receiving the policy which it had been agreed should be furnished him. And if his testimony is true, and it must be so accepted by this court, the policy which was issued did not express or evidence the contract or agreement which Rice intended that it should; for Rice had expressly agreed and understood that the policy should be issued to appellee in his name. While both Hulse and Rice in testifying expressed their conclusions that in procuring the policy the latter was not an agent of appellant, it is clearly established by the authorities which we have cited that he was in legal contemplation the agent of appellant, and that appellant is bound by his acts. Besides, it is undisputed that Seinsheimer & Co., who prepared the policy, were authorized agents of appellant, and it nowhere appears in evidence that they did not know that appellee had applied for the policy, and that they did not in fact intend to issue it in his name. Rice testified that he furnished them with a written memorandum giving the name and description of the property. That memorandum was not produced, and Hulse, the employé of Seinsheimer who prepared the policy, did not testify what it contained, and neither he nor Rice testified as to what name was given when the policy was ordered from Seinsheimer & Co., nor that appellee's name was not given to them, nor that they did not understand that the policy was to be written for him. They gave no explanation whatever as to why the name "Estate of F. C. Williar" was inserted in the policy, and it is not unfair to presume that if it had not been put there by mistake they would have been in a position to and would have brought evidence to show that no mistake was made on their part.

If, then, by reason of such mistake the policy did not evidence the true contract which was made, it would be harsh indeed to allow the appellant to receive the premium on it from appellee, and then refuse to carry out its obligations under it because it through mistake had inserted the wrong name. That appellee was under the evidence in this case entitled to have such a mistake corrected is established by the authorities above cited.

The first and second assignments are overruled.

[5] By the third and fourth assignments it is insisted that the trial court erred in rendering judgment for the plaintiff because under the terms of the policy sued on the loss, if any, is payable to the loan company "as its interest may appear," it appearing that the property insured is mortgaged to said loan company, and therefore it is the owner of the claim sued on, and is not made a party to this suit.

These contentions are without merit and are overruled. Appellee, being the assured under the policy, has the right to maintain an action thereon in his own name, although the policy contains a clause providing for payment of loss, if any, to Real Estate Loan Company as its interest may appear.

The statement in appellant's brief to the effect that "the plaintiff's policy offered in evidence shows a transfer by him to the Real Estate Loan Company as its interest may appear" is not correct. No transfer or assignment of the policy or any part of its proceeds by appellee to the Real Estate Loan Company was shown. The policy, however, contains as one of its original provisions a clause as follows: "Loss payable to Real Estate Loan Company as interest may appear."

Appellee testified that when he bought the house the loan company held the purchase notes for the property; that he was at the time of the trial indebted to the loan company, the exact amount of such indebtedness

he did not know, but it was something like $500.

Appellant did not by plea in abatement or otherwise plead nonjoinder of the loan company nor ask that it be made a party. Branigan v. Jefferson Mutual Fire Ins. Co., 102 Mo. App. 70, 76 S. W. 643.

[6] In order to defeat a recovery on the part of appellee, the burden was on appellant to show the existence of an interest in the Savings & Loan Company, and the extent of that interest and that burden was not discharged by merely showing that appellee was indebted to that company. Andrews v. Insurance Co., 92 Tex. 587, 50 S. W. 572; Huey & Philp v. Ewell, Admr., 22 Tex. Civ. App. 638, 55 S. W. 606.

In the case of German Ins. Co. v. Gibbs, 35 S. W. 679, cited by appellant, the assignment involved passed all rights and title, both legal and equitable, out of the assured and into the assignee. It plainly appears that no interest in the policy or its proceeds remained in the assured.

The case here presented is not parallel to that case. The clause in the policy sued upon created a contingent interest in the loan company, which from the face of the policy was doubtful both as to its existence and its extent, if it in fact existed, and the burden was on the appellant to prove such an interest and the extent of same in order for it to attempt on such grounds to defeat appellee's right of recovery, and it failed to discharge such burden. In order to show an interest in the proceeds in the loan company it was necessary to show not only a valid and subsisting indebtedness to it from appellee, but also that the loan company was entitled to the proceeds of the policy to be applied on that indebtedness. It nowhere appears in the evidence that appellee had not had the damages to the house repaired, so as to put it back in its original condition, and it cannot therefore be said that the right of the loan company to the proceeds of the policy is established by the evidence; for, if such repairs had been made, it had no interest in the insurance money. Huey & Philp v. Ewell, Adm'r, supra.

[7] By the fifth assignment it is insisted that:

"The court erred in rendering judgment under any circumstances against the plaintiff for $335, because of the existence of the coinsurance clause in said policy, to wit, 'It is a part of the consideration for this policy, and the basis upon which the rate of premium is fixed, that the assured shall maintain tornado insurance on each item of property insured by this policy, of not less than 50 per cent. of the actual cash value thereof, and that, failing to do so, the assured shall be an insurer to the extent of such deficit and bear such proportionate part of loss on each item,' the undisputed evidence being that at the time said policy of insurance was taken out, and at the date of the alleged loss, the house covered by said policy was of the reasonable value of $2,500, and hence a judgment for the entire loss against the defendant and ignoring said coinsurance clause is error."

This assignment is overruled. Appellant, having failed to plead the clause of the policy set out in the assignment as a defense, and failed to prove facts sufficient to show that it was entitled to a reduction of the amount of loss suffered by appellee because of the coinsurance clause, has not shown itself to be entitled to any such reduction.

We find no error committed by the trial court in the trial of this cause, and therefore the judgment rendered by said court is affirmed.

Affirmed.