## RELIANCE INS. CO. v. PRUITT.

### No. 4948.

Court of Civil Appeals of Texas. Texarkana.

April 30, 1936.

Rehearing Denied May 7, 1936.

Thompson, Knight, Baker & Harris, of Dallas, for appellant.

Couch & Couch, of Bonham, for appellee.

HALL, Justice.

Appellee brought suit against appellant in the county court of Fannin county for the sum of $500 and interest due him under a fire insurance policy issued by appellant's agent Bartley covering the loss by fire of a certain building in the city of Ladonia, Fannin county, Tex.

He alleged that said building was used as a meeting place for the colored Masonic Lodge of Ladonia known as the J. W. Smith Lodge No. 17; that appellant through its agent at Ladonia at appellee's instance and request issued a policy of insurance on said lodge building covering a loss by fire in the sum of $500; that said building was destroyed by fire on or about February 10, 1933. On both the date of the issuance of the policy and the fire, appellee alleged he was the owner of said building as well as the lot upon which it was located. It was undisputed that the policy of insurance was issued in the name of J. W. Smith Lodge No. 17 and was payable to said lodge. The appellee alleged that the error in the policy with respect to the owner of the building insured was made by the agent of the appellant either through mistake, negligence, or fraud; that he informed appellant's agent that the property belonged to him and he wanted it insured for his benefit because he "had too much money tied up in it to lose it." Appellee alleged, further, that he did not know the policy was in the name of the lodge until after the fire; that the policy was never delivered to him, but was kept by the agent of the insurance company. Appellee prayed for a reformation of said policy, and for judgment for $500, the sum due under the policy, and interest thereon.

Appellant answered by general demurrer and general denial. A trial was had to the jury upon a single special issue which was answered favorably to appellee. The court entered judgment for appellee, and appellant prosecutes its appeal to this court.

Appellant complains of the action of the trial court in refusing to instruct a verdict in its behalf, and in refusing to enter a judgment in its behalf non obstante veredicto. These assignments are based on the theory that the evidence was not sufficient to support the verdict of the jury and the judgment of the court based thereon. The testimony of appellee with respect to the issuance of the insurance policy is:

"Q. Where did you go to get your insurance? Who did you go to? A. Mr. Bartley. When Mr. Sweeney left I was paying it on the installment plan and I owed him some when he left, and he written me to see Mr. Bartley and pay it there to his credit at the little Ladonia Bank, whatever the name is, Farmers Bank I believe it is, and I told him that I had paid that last part of that premium over to Mr. Sweeney at Breckenridge; and I asked him then who was the agent for the insurance company that Mr. Sweeney was agent for. He said he was, said he bought out Mr. Sweeney. I told him then I wanted to insure my property in the west end of town; that I didn't want it to go uninsured one minute because I had too much money tied up in it to lose it. I says, 'Will you allow me to pay it like I did Mr. Sweeney?' He said: 'I will.' That was in October. I said: 'Now you keep tab and don't let nothing get by because I want to keep that stuff insured.' He said: 'All right, I will see about it for you.' When it got ready, he said, 'I will write you for you to pay.' I went in there and paid it, partial payments, five payments partial, $12.00 and something on the installment, then when I had got that paid I told him then I wanted it insured for my protection and my protection only.

"Q. Whose building did you tell him it was at that time? A. I told him it was mine. He asked me which one it was, whether it was where the K. P. there meet. I said: 'No, sir, it is the one that the negro Masons meet in, known in that part of the town as the J. W. Smith Lodge 17.' And he says: 'All right, I will look it over and let you know.' I paid it and made arrangements with him the second time. After the burn came I went down there to see him and asked him had the insurance run out on it. He said: 'Everything's all right.' And he said: 'The receiving agent will be here pretty soon to take that up.' I went on home. I returned to see him several times between that time; he told me that the agent hadn't come in, receiving agent, and I was getting a little worried; and then he

came out one day while I was plowing in the field and he says to me: 'Where is all of them negro Masons in Ladonia?' I said, 'All around down there.' He says: 'I made that policy payable to Smith Lodge and their Trustees.' I said: 'You made it wrong.' He said he could cash it that way. I said: 'I don't care how you cash it so you pay the money.' He said: 'Who do you want to get out the proof of fire?' I didn't know what he was talking about. He said to take up what the building was worth. I said I didn't know, 'Get Mr. Ben Weldon.' He said: 'Mr. Ben's sick,' says, 'I can get a party that will take it up.' I said: 'Mr. Jim Ingram, that's all right, suits me.' Then we stood there a few minutes and talked on. He said: 'Well, I will tell you, Pruitt,' he says, 'Neither one of us can have anything to do with this so we will just have to leave it up to the agent.' I said, 'All right.' Then the agent come and he come down there and he asked whose property it was. I said, 'Mine.' He says: 'How do you know?' I said: 'I got a deed to it.' He said: 'Where is it at?' I said, 'Out home.' He said: 'Let's go out there and see it.' We got in the car and went and got it, and brought it back to the city, and I recall he taken a copy of it. Then he walked around a few minutes and said: 'I am sorry to tell you, Pruitt, the Smith Lodge has a policy and you have the land and house and no policy. I could pay you $250.00 and that's all I could do. If the lodge and you would give a receipt.' I told him the Lodge could give him anything they wanted to; I wouldn't give him anything.

"Q. Did you have any place to keep this policy? A. No, sir.

"Q. Did you ever receive a policy until after the fire? A. No, sir.

"Q. Who had the policy during that time? A. He must had had it, but when I went to get it he didn't have it; said the man in Dallas had it.

"Q. At any rate you didn't have it. Did he offer to keep the policy for you? A. He kept it.

"Q. Never offered to give it to you? A. No, sir.

"Q. It never was in your hands at any time? A. No, sir.

"Q. You just trusted it to him? Can you read? A. I can read a little.

"Q. Could you read the policy if you had it, and understand it? A. No, sir.

"Q. Did you keep the premiums to this policy paid up all the time? A. I did."

The witness Arch Herron testified that he heard appellee tell Bartley, agent for appellant: "I don't want that insurance to run out on me; I want it kept for my own benefit." Agent Bartley denied any knowledge of the change in ownership from the lodge to appellee until after the fire, or that appellee ever informed him that the lodge hall belonged to him. The testimony of Agent Bartley relative to most of the material facts was contradictory of the testimony of appellee. However, he admitted that the premium was paid by appellee. The following affidavit signed by appellee was introduced in evidence by appellant:

"The State of Texas, County of Fannin.

"Before me, A. L. Bartley, a notary public in and for Fannin County, Texas, on this day personally appeared J. W. A. Pruitt, known to me to be the person whose name is subscribed hereto, and who being by me duly sworn, on oath deposed and said:

"That for several years the two-story, frame building, situated in Ladonia, Texas, and occupied by the J. W. Smith Lodge No. 17, was owned by said Lodge. The property was also insured in the name of said Lodge, that about April 18th, 1929, said property was deeded by the Lodge to him and that through oversight on his part the insurance was continued in the name of the Lodge, that he failed to ask the local agents, writing the insurance, to transfer the fire insurance to him. He further says that it did not occur to him until sometime after the fire occurred that he should have asked A. L. Bartley & Co. to change the insurance to his name.

"[Signed] J. W. A. Pruitt.

"Subscribed and sworn to before me this 25th day of March, A. D. 1933, at Ladonia, Texas. [Signed] A. L. Bartley, Notary Public, Fannin County, Texas. [Seal]"

Appellee's explanation of this affidavit is shown by his testimony as follows:

"Q. Mr. Pruitt, you stated you signed that instrument, did you? A. I signed it, that wasn't on it.

"Q. Now, you signed it because Mr. Bartley talked to you and told you that you could collect this insurance?

"Mr. Henderson: We object to that as leading the witness.

"Q. State what Mr. Bartley and this gentleman, if he was there, told you about this instrument. A. He told me to sign it. He said it was in bad condition. He said: 'If you will sign this, it will make it easier for you to collect this insurance.' He said: 'It's all right to sign.' I took it and went outside. I tried to read it but couldn't without my specs. Then I went to him and talked to him—

"Q. Who was that? A. This man over there.

"Q. What's his name? A. Mr. Edwards.

"Q. Now, tell what he said to you. A. He said it made it easier to collect. I wasn't satisfied with that so I went back and asked the agent, Mr. Bartley.

"Q. Why did you ask Bartley? A. For his instruction upon it, thinking he would tell me the real truth. He said: 'Yes, that makes it easier to collect.' I said: 'Mr. Bartley, I will sign it under what you said, but,' I said, 'I expect I ought not to do such a thing.' He said: 'It's perfectly all right.' I said: 'All right, I will sign it. You are the agent, you have been tending to all of it.'

"Q. Did you rely on what Mr. Bartley told you? A. I did.

"Q. Have you known Mr. Bartley practically all his life? A. All of his life.

"Q. Did you tell Mr. Bartley or anyone else to insure that Lodge only just for your benefit? A. Only for me.

"Q. You told him to insure it for you, that you owned the property, was that right? A. I did,—why, he said he did it that way, he copied an old insurance is what he said.

"Q. Did you tell him to copy this old insurance? A. No, sir.

"Q. Did you know the old insurance was made out to the Lodge? A. I don't know how it was made. The Lodge just paid it.

"Q. After you bought it then you took charge of it, did you? Did you after you bought the property tell Mr. Bartley or anyone else to make out insurance to the Lodge? A. No, sir.

"Q. Did you know it was made out to the Lodge? A. No, sir.

"Q. Would you have paid the premiums on it if you had? A. No, sir.

"Q. Did you ever see any of the old policies? A. No, sir.

"Q. I believe you said you have known Mr. Bartley all of his life haven't you? A. Yes, sir.

"Q. You relied on what he told you? A. I did."

The agent Bartley and Adjuster Edwards testified that they explained the affidavit to appellee before he signed the same. The evidence is undisputed that the house was a total loss; that the policy of insurance with loss payable to the lodge, covered same, and was in force at the time of the fire; and that the premium was paid by the appellee. The evidence shows, further, without dispute, that appellee made certain arrangements regarding the manner of payment of the premium.

The controlling question here is one of reformation of the contract, and for this reason we have quoted rather extensively from the testimony of appellee. The settled rule of law in this state is that to reform a written contract for mutual mistake the evidence must be clear, satisfactory, and convincing. And as to whether a given state of facts in a case of this character satisfies this high standard of the law is a question of law to be determined by the court. House v. Rogers (Tex.Civ. App.) 23 S.W.(2d) 414. A mutual mistake or fraud in the execution of a written contract may be established by one witness if his testimony is of that high character required by the law; and this is true even though said witness may be an interested party. Layton v. Hall, 25 Tex. 204, 205. The circumstances surrounding this case clearly indicate that the insurance policy was not written as agreed upon by appellee and the agent of appellant. At the time the application was made by appellee for the insurance policy, the lodge hall belonged to him. He was the party who made the arrangements to pay the premium on said policy in small installments. It is not reasonable to say that appellee would enter into negotiations to insure his own property and make arrangements for payment of the premium without stating that the property belonged to him. We think the affidavit signed by appellee before agent Bartley, introduced in evidence on behalf of appellant, is sufficiently explained by evidence of appellee with respect thereto.

The jury after hearing all the evidence found that the appellee did inform the agent of appellant that the property to be insured belonged to him (appellee), and we do not think we would be justified in holding as a matter of law that the evidence did not warrant the jury's finding. And in response to said jury's finding, we think the trial court entered the correct judgment reforming said insurance contract and awarding to appellee the amount of money sought by him. And this is true whether the error in the insurance policy was the result of a mutual mistake, negligence, or fraud on the part of the insurance agent. In Automobile Ins. Co. v. Buie (Tex.Civ.App.) 252 S.W. 295, 297, it is said: "As the judgment must be reversed upon other grounds, we will not discuss the evidence, which appellant insists was insufficient to warrant the reformation of the contract sued upon; but this much may be said upon the question: If it is shown by clear and convincing proof that in applying to the agent for the insurance the insured specifically describes the property desired to be covered, and the policy issued in pursuance of this application misdescribes the property and includes material not intended by the insured to be covered, the result amounts to a mutual mistake of the parties. If, through no negligence of the insured, the mistake is not noticed by him, and the property is destroyed, the contract, if void in the form written, will be reformed so as to embrace the real intention, and if valid as so reformed will be enforced. Joyce, Ins. § 3509 et seq.; Home Insurance Co. v. Lewis, 48 Tex. 622; Camden Insurance Co. v. Wandell, supra [(Tex.Civ.App.) 195 S.W. 289]; Ætna Insurance Co. v. Brannon, 99 Tex. 391, 89 S. W. 1057, 2 L.R.A.(N.S.) 548, 13 Ann.Cas. 1020; Kelley v. Ward, 94 Tex. [289] 297, 60 S.W. 311; Delaware Insurance Co. v. Hill (Tex.Civ.App.) 127 S.W. 283."

The case of Camden Fire Ins. Ass'n v. Wandell (Tex.Civ.App.) 195 S.W. 289, 290, is similar in many respects to this case. In that case the property was by error insured in the name of a former owner. On the trial of the case the insurance agent testified he did not remember the owner requesting that the insurance policy be renewed, that he thought a Mr. Lovenberg made the request, but he knew that the owner paid the premium. In affirming the judgment of the trial court allowing a recovery on said policy, the court said:

"Defendant's agent knew the facts relative to the ownership of the property insured, or at least there was evidence sufficient to support a finding that he did, and, so knowing, accepted the premium and caused the policy to be written containing the clause of ownership, and cannot now set up the fact that the ownership is erroneously stated in the policy to defeat the collection of the insurance. The knowledge of the agent so acting for the company is the knowledge of the company itself, and it

is estopped from setting up the clause in which the ownership is erroneously stated as a defense. Fire Ass'n v. Laning [Tex. Civ.App.] 31 S.W. 681, at page 683, and authorities therein cited; Burson v. Fire Ass'n, 136 Pa. 267, 20 A. 401, 20 Am.St. Rep. 919; Phoenix Ins. Co. v. Tucker, 92 Ill. 64, 34 Am.Rep. 106; Crescent Ins. Co. v. Camp, 71 Tex. 503, 9 S.W. 473.

"The court did not err in reforming the policy so as to make it evidence the true contract made between plaintiff and defendant, through its agent, and in rendering judgment for plaintiff. The company is estopped to deny the validity of the policy on the grounds that the ownership was not as therein stated, when its agent, with knowledge that the property belonged to plaintiff, issued the policy in the name of the estate of one who formerly owned the same, and took the premium. Continental Ins. Co. v. Cummings [Tex.Civ.App.] 78 S.W. 378; Aetna Ins. Co. v. Brannon, 99 Tex. 391, 89 S.W. 1057 [2 L.R.A.(N.S.) 548, 13 Ann.Cas. 1020]; Delaware Ins. Co. v. Hill [Tex.Civ.App.] 127 S.W. 283; Joyce on Ins. § 3510. * * *

"That the evidence detailed in the foregoing statement is sufficient to support a finding that the contract of insurance evidenced by the policy sued upon was in fact entered into by appellant with appellee is apparent. *Should the testimony of Rice to the effect that he had no recollection of having agreed to procure the policy for the appellee, and in his name, be treated as contradictory of appellee's positive testimony that such an agreement was made between them, nevertheless appellee's testimony is clearly sufficient to establish such agreement, and, the trial court having found in his favor, this court will under the familiar and well-established rule refuse to disturb such finding. That would be true even if the testimony of Rice raised a direct conflict with that of appellee, but we think it clear no such conflict exists. When properly analyzed, Rice's testimony amounts to nothing more than if such an agreement was made with appellee he did not recollect it. He would not directly deny that it was made."* (Italics ours.)

Complaint is made regarding the action of the trial court during the cross-examination of appellee with respect to the affidavit signed by him and introduced in evidence. Granting, for the sake of argument, that this was error, we do not think it was of such harmful nature as to require reversal of the judgment of the lower court.

The judgment is affirmed.