McQueen v. Collins et al 






NO. 10-90-189-CV

IN THE
COURT OF APPEALS
FOR THE
TENTH DISTRICT OF TEXAS
AT WACO

* * * * * * * * * * * * *

          SYNNACHIA McQUEEN,
                                                                                            Appellant
          v.

          JAMES A. COLLINS, ET AL,
                                                                                            Appellees

* * * * * * * * * * * * *

 From 52nd Judicial District Court
Coryell County, Texas
Trial Court #25,137

* * * * * * * * * * * * *

MEMORANDUM OPINION

* * * * * * *
          This is an appeal from an order of dismissal signed on July 23, 1990. Notice of appeal and
an affidavit of inability to pay costs were filed on August 13. The transcript does not include a
motion for new trial, thus the record was due in this court on September 21. See Tex. R. App.
P. 54(a). The transcript was received but not filed in this court on October 25. Appellant filed
a motion for out-of-time appeal on November 6.
          Appellant's motion for out-of-time appeal is denied because it was not filed within fifteen
days of the due date of the transcript. See Tex. R. App. P. 54(c). The appeal is dismissed for
failure to comply with the Rules of Appellate Procedure. See Tex. R. App. P. 60(a)(2); 54(a).  
                                                                                 PER CURIAM

Before Chief Justice Thomas and Justice Vance
       (Justice Cummings not participating)
Dismissed
Opinion delivered and filed January 31, 1991
Do not publish



0;                                           Appellee
 

From the 87th District Court
Limestone County, Texas
Trial Court # 24,744B
                                                                                                               
                                                                                                         
O P I N I O N
                                                                                                               

      Mark Loyd is the sole shareholder of M.L. Resources, Inc. In May 1996, Loyd went to
see then-95-year-old Myrtle Miller at the retirement home in which she resided. Miller had
agreed to sell Loyd a part of her mineral interests in some property, but he brought with him a
deed which conveyed all of her mineral interests to him. She signed the deed, selling to Loyd
for $600 a royalty-income stream then yielding $3,000 a year. In this suit, the trial court
declared that she was entitled to a judgment reforming the deed so that it conveyed less than
her entire mineral estate. Loyd appeals, asking us to reverse the judgment, arguing (1) the
deed could never be subject to reformation because it was drafted before Miller agreed to sell
her interests, and (2) the evidence is insufficient to support the court’s judgment. Rejecting
both of his contentions, we affirm the judgment.
Background
      Miller owned a .007374 fractional interest of the “Miller Gas Unit” located in Limestone
County. The mineral estate in the Unit had been divided horizontally into two parts: the
“shallow horizon rights,” covering minerals up to 7,500 feet below the surface and the “deep
horizon rights,” covering minerals found 7,500 feet and further below the surface. 
      In the early part of 1994, Loyd was the operator of the Miller Gas Unit. In October, he
attempted to purchase Miller’s shallow horizon royalty rights by mailing her a bank draft and a
deed conveying those rights to him. At that time, Miller told Loyd that she was not interested
in selling her rights.
      In 1996, Loyd again contacted Miller in an attempt to purchase her mineral rights. As
before, he initiated the offer to buy her property by sending her a deed and a check. This
time, though, the deed was not limited to her shallow horizon rights, but had the effect of
conveying her entire mineral estate to him. In a follow up phone call, Miller rejected his
offer, but agreed to sell him some rights for $600, although exactly what rights she agreed to
sell was disputed at trial. According to Miller, she told Loyd on the phone that she would sell
him only her shallow horizon rights. Loyd went to see Miller, bringing with him a deed which
conveyed all of her mineral rights to him. Although Miller tried to read the deed, she could
not find either her glasses or the magnifying glass that she used to help her read. 
Nevertheless, she signed the deed, and Loyd paid her $600.
      After Mitchell Energy Company, the Miller Unit’s operator in 1996, stopped sending
Miller royalty payments some two months later, Miller attempted to contact Loyd to have the
deed corrected. Loyd refused to speak with her about it, and she filed this suit seeking to have
the deed reformed by the court to show that she conveyed only her shallow horizon rights. 
After a bench trial, the court found that Miller’s vision was limited, she had relied on the
representations by Loyd as to what the deed she signed conveyed, she believed that Loyd was
seeking to purchase the shallow horizon rights, she mistakenly believed that she had conveyed
only those rights to Loyd by the deed, and that her mistake was accompanied by fraud or other
inequitable conduct by Loyd in his representations to Miller regarding the deed. Based on
these findings, the court ordered the deed reformed to convey only the shallow horizon rights
and awarded Miller $7,500 in attorney’s fees. 
Can a “preprinted” deed ever be reformed?
      In his first issue, Loyd claims that the trial court erred because the “deed was drafted
before any negotiation between Miller and Loyd and it was signed without alteration[,]” and so
could never be reformed to convey only the shallow horizon mineral rights. He relies on
Cherokee Water Co. v. Forderhouse, 741 S.W.2d 377, 380-81 (Tex. 1987) (Cherokee Water
II). In Cherokee Water II, the plaintiffs signed a preprinted deed and later sought to reform the
deed to delete a right of first refusal to “purchase the oil, gas and other minerals” in the
property. Id. at 378. According to the Supreme Court, “any discussion, much less agreement,
concerning [the right of first refusal] occurred after the deed was signed.” Id. at 380. Thus,
in Cherokee Water II there was no agreement other than that expressed by the language of the
deed, and that language unambiguously conferred the right of first refusal of all minerals on
Cherokee Water Company. Id. at 381 (“All that we have in this case is a form deed which
contained the total agreement between the parties.”); see also Cherokee Water Co. v.
Forderhouse, 641 S.W.2d 522, 525 (Tex. 1982) (Cherokee Water I) (holding that the language
of the deed at issue unambiguously covered leases of the mineral rights). Because reformation
of the deed would result in “making and enforcing a contract the parties never agreed to[,]” the
Court refused to uphold the lower court’s orders doing so. Cherokee Water Co., 741 S.W.2d
at 380-81.
      Thus, the determinative fact in Cherokee Water II was not that the deed was preprinted,
but that the parties’ only agreement was found in the terms of the deed. In our view, Cherokee
Water II does not stand for the proposition that a preprinted deed can never be subject to
reformation, as Loyd contends.
      Loyd sent Miller an offer and a proposed deed. They negotiated an agreement over the
phone, but Loyd did not draft a new deed. Loyd argues that he should prevail because he did
not modify the deed he initially proposed to reflect the agreement he and Miller actually
reached. We do not believe that the law requires such a result. If there is an agreement which
is not correctly memorialized in the writing by which the parties intend to record their
agreement, it is subject to reformation regardless of when the actual instrument was physically
produced. See Davis v. Grammar, 750 S.W.2d 766, 767-68 (Tex. 1988). Thus, Loyd’s first
issue is without merit.
 

Is the evidence sufficient?
      In his second issue, Loyd argues that the evidence is legally insufficient to support the
judgment.


 He appears to argue that Miller was required to prove her right to reformation by
clear and convincing evidence in the trial court, citing Oldaker v. Travelers Ins. Co., 497
S.W.2d 402, 404 (Tex. Civ. App.—El Paso 1973, no writ), and Reliance Ins. Co. v. Pruitt, 94
S.W.2d 833, 836 (Tex. Civ. App.—Texarkana 1936, writ dism’d). However, these two cases
represent examples of the outdated use of “clear” and “convincing” as an appellate review
standard, not as a burden of proof in the trial court. See Bill Vance, The Clear and
Convincing Evidence Standard in Texas: A Critique, 48 Baylor L. Rev. 391, 392 (1996). We
know of no statute or decision by a Texas court imposing the clear and convincing burden of
proof at trial in an action to reform a deed, and Loyd has not cited us to one. We decline to do
so here. See id. 405-09; see also Ellis County State Bank v. Keever, 888 S.W.2d 790, 792-93
(Tex. 1994).



      In reviewing a "no evidence" complaint, we consider only the evidence supporting the
judgment and draw all inferences in the light most favorable to the judgment. Southwestern
Bell Mobile Systems, Inc. v. Franco, 971 S.W.2d 52, 54 (Tex. 1998); Garza v. Alviar, 395
S.W.2d 821, 823 (Tex. 1965). If there is more than a scintilla of evidence supporting the
findings, the no-evidence challenge fails. See Texarkana Memorial Hosp., Inc. v. Murdock,
946 S.W.2d 836, 838 (Tex. 1997). "More than a scintilla of evidence exists when the
evidence supporting the finding, as a whole, 'rises to a level that would enable reasonable and
fair-minded people to differ in their conclusions.'" Burroughs Wellcome Co. v. Crye, 907
S.W.2d 497, 499 (Tex. 1995) (quoting Transportation Ins. Co. v. Moriel, 879 S.W.2d 10, 25
(Tex. 1994)). We will sustain a no evidence point of error when: (1) the record discloses a
complete absence of evidence of a vital fact; (2) the court is barred by rules of law or of
evidence from giving weight to the only evidence offered to prove a vital fact; (3) the evidence
offered to prove a vital fact is no more than a mere scintilla; or (4) the evidence establishes
conclusively the opposite of the vital fact. Uniroyal Goodrich Tire Co. v. Martinez, 977
S.W.2d 328, 334 (Tex. 1998), cert. denied, 526 U.S. 1040, 119 S.Ct. 1336, 143 L.Ed.2d 500
(1999).
      “A party is entitled to reformation of a deed upon proving the party had reached an
agreement with the other party but the deed did not reflect the true agreement[.]” Davis, 750
S.W.2d at 768. Typically, the basis for the error in the deed must be a mutual mistake. Id. 
However, the deed may also be reformed due to a “[u]nilateral mistake by one party, and
knowledge of that mistake by the other party[.]” Id. In such a situation, “knowledge of the
mistake by one party and his failure to reveal it to the other party amounts to such inequitable
conduct as will justify reformation.” Hill v. Spencer & Son, Inc., 973 S.W.2d 772, 775 (Tex.
App.—Texarkana 1998, no pet.).
      The court found that the deed should be reformed because Miller intended to convey her
shallow horizon rights to Loyd, mistakenly believed that the deed conveyed only those rights,
and her mistaken belief was accompanied by inequitable conduct by Loyd in the form of his
representations to her concerning what the deed actually conveyed at a time when she was
unable to read the deed herself. All of these findings are supported by some evidence.
      Miller testified repeatedly that she told Loyd that she would sell only her shallow horizon
rights. According to Miller, “several times when [Loyd] called over the telephone, [she] said
now you understand that the only thing [she] want[ed] to sell” was her shallow horizon rights. 
When Loyd came to see her, “the first thing [she] told” him was that she only wanted to sell
the shallow horizon rights. 
      In keeping with this agreement, she believed that the deed conveyed only the shallow
horizon rights. She testified, “I thought from our conversation and all that it was just a
contract for the [shallow horizon rights]. It didn’t dawn on me that it was anything but that.” 
She also testified that “[she] reminded him that [she] was selling only [her shallow horizon
rights], and [Loyd] understood that, he said yes.” 
      Finally, Miller described her lack of vision and her reliance on Loyd to tell her the
contents of the deed. She said that she had been declared legally blind fifteen years before
trial. She had to have both her glasses and a magnifying glass to read. When she and Loyd
met, however, she was unable to find her glasses and, so, could not read the deed that she
signed. She testified that she told Loyd she did not have her glasses and wanted to make sure
that the deed related to only her shallow horizon rights. According to Miller, when she said
this to Loyd, “[h]e said I understand that.”
      To succeed in having the deed reformed, Miller was required to show that the agreement
between herself and Loyd was not correctly reflected in the deed and that Loyd knew of the
mistake while she did not. The court found she established that she had agreed to sell her
shallow horizon rights, that she was mistaken about what the deed she signed actually
conveyed, and that Loyd engaged in inequitable conduct by his representations concerning the
true contents of the deed. These findings are all supported by some evidence. Thus, the
evidence is legally sufficient to support the court’s judgment, and Loyd’s second issue is
without merit.
Conclusion
      We have rejected Loyd’s first issue because there was an agreement that was not correctly
reflected in the written deed, thus, the fact that the deed was physically produced before the
agreement was reached does not bar Miller from having the deed reformed to reflect the actual
agreement. We have rejected his second issue because the evidence is legally sufficient. 
Having rejected both of his complaints, we affirm the judgment. 
 
 
                                                                                 BILL VANCE
                                                                                 Justice

Before Chief Justice Davis
          Justice Vance, and
          Justice Gray
Affirmed
Opinion delivered and filed December 6, 2000
Do not publish